**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-772

ALAN KENNEDY,

     *Plaintiff*,

v.

DOUGLAS PAUL, Assistant Adjutant General, Colorado National Guard;
RICHARD SANDROCK, JFHQ Commander, Colorado National Guard;
CHARLES BEATTY, Chief of Staff (Army), Colorado National Guard;
KEITH ROBINSON, Staff Judge Advocate, Colorado National Guard;
LAURA CLELLAN, Adjutant General, Colorado National Guard;
DANIEL HOKANSON, Chief of the National Guard Bureau;
JOHN WHITLEY, Acting Secretary of the Army; and
LLOYD AUSTIN, Secretary of Defense,

in their official capacities,

     *Defendants*.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

     Plaintiff Alan Kennedy, through undersigned counsel, states the following Complaint for Declaratory and Injunctive Relief against the named Defendants in their official capacities:

### <u>BLACK LIVES MATTER PROTEST IS PROTECTED BY FIRST AMENDMENT</u>

     1.     This case raises a novel constitutional question: can the government prohibit part-time (weekend a month) military reservists from peacefully participating in Black Lives Matter protests, and writing op-eds about matters of public interest, when they are not on orders, not on duty, and not in uniform? If the First Amendment means anything, the answer is NO. However, no known case has addressed either this question or Department of Defense Instruction 1325.06,

1

Enclosure 3, paragraph 6(d), the sole provision cited by Defendants to restrict Plaintiff's First Amendment rights to participate in Black Lives Matter protests and write op-eds when not on orders, not on duty, not in uniform, and not in breach of law and order. Colorado National Guard Defendants defended restriction of Plaintiff's Black Lives Matter protest participation by falsely claiming that Black Lives Matter protests are "inherently violent," and asserting that Black Lives Matter protests "begin peacefully and devolve into violent clashes with the police." Nothing less than the right to peacefully participate in Black Lives Matter protests and to write op-eds is at stake. Racism is real, peaceful protest is patriotic, and constitutional rights must be protected.

2.      On May 30, 2020, Alan Kennedy ("Plaintiff") peacefully participated in a Black Lives Matter protest in Denver, Colorado. The march protested police murders of George Floyd, Breonna Taylor, Elijah McClain, and others. Denver Police, without warning or any provocation, fired clouds of tear-gas at peaceful marchers, violating their constitutional rights. Plaintiff wrote an op-ed about it, published by *Denver Post* on June 4, 2020. The op-ed is attached as **Exhibit 1**. Plaintiff, who serves part-time (usually on orders only two days a month) as a captain and deputy staff judge advocate in the Colorado National Guard, was not on any military orders, not on duty, and not in uniform. Plaintiff peacefully protested and expressed opinions in a personal capacity.

3.      On June 4, 2020, Charles Beatty, Colorado National Guard chief of staff (Army) ("Defendant") appointed colonel Christopher Lowman to officially investigate Plaintiff's Black Lives Matter protest participation and *Denver Post* op-ed. Lowman found, on June 18, 2020, that the May 30, 2020 Black Lives Matter march was a "peaceful protest," not expected to result in violence, and did not result in violence except for the "unprovoked response by Denver Police." Lowman found Plaintiff participated "as an individual not in uniform and not in a pay status." Lowman concluded that the Black Lives Matter protest and op-ed were protected by the First

Amendment. Lowman's July 18, 2020 findings are found in **Exhibit 5**. Plaintiff wrote a protest-related op-ed published by *Colorado Newsline* July 9, 2020. That op-ed is attached as **Exhibit 2**.

4.　　　　However, on July 12, 2020, Defendant Beatty overturned his own investigating officer's findings and directed Richard Sandrock ("Defendant"), to reprimand Plaintiff for his Black Lives Matter protest participation, citing only Department of Defense Instruction 1325.06, Enclosure 3, para. 6(d), which prohibits "members of the Armed Forces" from "participating in off-post demonstrations" if "violence is likely to result." Paragraph 6 also bars demonstrations if (a) "on-duty," (b) "in a foreign country," (c) "activities constitute a breach of law and order," or (e) "in uniform." Without evidence, Defendant Beatty found (d) "violence was likely to occur." By contrast, Lowman had found para. 6(d) was not violated, and did not apply. Defendant Beatty also objected to the *Denver Post* op-ed for reasons rejected by a prior Colorado National Guard investigation that found Plaintiff's widely viewed *New York Times* video op-ed "did not violate any prohibitions, limitations, standards or policies with regard to exercise of political activities, use of media or ethical standards." *The New York Times* op-ed overview and November 7, 2019 findings constitute **Exhibit 3**. Department of Defense Instruction 1325.06 is found in **Exhibit 4**.

5.　　　　On July 12, 2020, Defendant Sandrock reprimanded Plaintiff for his Black Lives Matter protest participation, citing only Department of Defense Instruction 1325.06, Enclosure 3, para. 6(d). The July 12, 2020 reprimand and rebuttals are found in **Exhibit 5**. On July 16, 2020, Defendant Beatty appointed his acting chief of staff to again investigate the Black Lives Matter protest participation, *Colorado Newsline* op-ed, and whistleblower complaints. The report was illegally withheld and modified. On Aug. 14, 2020, Defendant Beatty denied Plaintiff's appeal, stating Black Lives Matter protests "begin peacefully and devolve into violent clashes with the police." On Nov. 17, 2020, Defendant Sandrock denied Plaintiff's appeal without explanation.

6.      On September 13, 2020 [reprimand dated September 11, 2020], brigadier general Douglas Paul, assistant adjutant general of Colorado National Guard ("Defendant"), reprimanded Plaintiff for Black Lives Matter protest participation and *Colorado Newsline* op-ed, citing only Department of Defense Instruction 1325.06, Enclosure 3, para. 6(d). The second reprimand and rebuttal are found in **Exhibit 6**. On September 24, 2020, Defendant Paul defended the reprimand by falsely claiming that Black Lives Matter protests are "inherently violent." Defendant Paul's attorney, Rory Devlin, failed to disclose that his civilian employer was prosecuting Black Lives Matter protesters, and inexplicably said the reprimand was also for Plaintiff's *New York Times* video op-ed. On December 5, 2020, Defendant Paul filed the second reprimand permanently.

7.      On January 26, 2021, Defendant Beatty threatened to file a negative evaluation that he and Keith Robinson, staff judge advocate and Plaintiff's supervisor ("Defendant"), based on Plaintiff's Black Lives Matter protest participation, citing Defendant Sandrock's reprimand and Department of Defense Instruction 1325.06, Enclosure 3, para. 6(d) (they had illegally cited whistleblower complaints but retracted that explanation). On January 28, 2021, brigadier general Laura Clellan, Colorado National Guard adjutant general ("Defendant"), blocked filing pending her review. Defendant Beatty's January 26, 2021 explanation and Defendant Clellan's response are found in **Exhibit 7**. On March 4, 2021, Defendants Beatty and Robinson filed the evaluation.

8.      On October 15, 2020, Defendant Clellan met with Plaintiff and said she could not discuss Plaintiff's constitutional objections as she was the "appeal authority." Plaintiff appealed the unconstitutional reprimands to Defendant Clellan multiple times. However, on February 16, 2020, Defendant Clellan, stated via counsel that she lacked authority to reverse the reprimands, referred "any further appeal" to chief of National Guard Bureau chief, general Daniel Hokanson ("Defendant"), and said she intended to begin an investigation of "procedural and administrative

defects," but not constitutional defects. Defendant Clellan's final decision is found in **Exhibit 8**. Defendant Clellan specifically refused to "render judicial determinations on [any] constitutional questions…presented such as, Is DoDI 1325.06 facially overbroad under the First Amendment."

9.      Plaintiff challenges Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), as unconstitutional both as applied and on its face, under the First Amendment and due process clauses of Fifth and Fourteenth Amendments. Plaintiff challenges para. 6(d), which was neither passed by Congress nor reviewed outside office of the Secretary of Defense, as applied by Defendants unconstitutionally and with ongoing chilling effect. Plaintiff challenges para. 6(d), as facially unconstitutional, for content discrimination, vagueness, and overbreadth. Plaintiff also challenges its application under Administrative Procedure Act. Notably, para. 6(d), and its application to Plaintiff's peaceful Black Lives Matter protest participation, when not on orders, not on duty, and not in uniform, continue to chill Plaintiff's ability to peacefully protest institutional racism and police violence in furtherance of his opinion that Black Lives Matter.

## JURISDICTION AND VENUE

10.      This action arises under the Constitution and laws of the United States, including First and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, for Defendants Paul, Sandrock, Beatty, Robinson, and Clellan, sued in their official capacities as state National Guard members. This action arises under the Constitution and laws of the United States, including First and Fifth Amendments, and also pursuant to Administrative Procedure Act, 5 U.S.C. §§ 702, 704, 706, for Defendants Hokanson, Whitley, and Austin, sued in official capacities as federal agency heads. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1361 because of federal questions and deprivation of constitutional rights. This Court has prospective remedial authority via Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiff seeks no monetary damages.

11.     Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b)(2) for all Defendants, because substantial part of events or omissions giving rise to action occurred in this District, and also under 28 U.S.C. § 1391(e)(1) for Defendants Hokanson, Whitley, and Austin.

## PARTIES

### Plaintiff Alan Kennedy

12.     Plaintiff Alan Kennedy is a 36-year-old resident of Denver, Colorado.

13.     Plaintiff is a Yale University and William & Mary Law School graduate and Ph.D. candidate at University of Colorado Denver. He is a constitutional scholar and teaches administrative law to graduate students. He is known for protesting injustice and writing op-eds. He was a presidential elector for President Joe Biden and Vice President Kamala Harris in 2020.

14.     Plaintiff serves part-time as a captain and deputy staff judge advocate in the Colorado National Guard. He has served in the National Guard since 2012 and deployed to the Middle East in 2018-19 with the 34th Infantry Division. In 2014, Plaintiff was named to the Commandant's List upon graduation from Judge Advocate Officer Basic Course. In 2016, he was also named to Commandant's List upon graduation from Judge Advocate Officer Advanced Course. In 2018, he was named Officer of the Year for Midwest by Army National Guard Trial Defense Service. His record was unblemished prior to Black Lives Matter protest participation.

15.     Plaintiff peacefully protested on May 30, 2020, walking a few blocks from his home to join the march, carrying a handwritten cardboard sign that read "George Floyd" on one side, and "End Police Brutality" on the other side. Plaintiff participated in Black Lives Matter protests in a personal capacity, and was not on orders, not on duty, and not in uniform. Plaintiff was not in breach of law and order, and Defendants have not claimed he was. Plaintiff intends to continue to peacefully protest racism and police violence, and to continue to opine on injustice.

**Defendants**

16.     Defendant Douglas Paul is an assistant adjutant general in the Colorado National Guard. He is responsible for deprivations of constitutional rights. He is sued in official capacity.

17.     Defendant Richard Sandrock is Plaintiff's commander in the Colorado National Guard. He is responsible for deprivations of constitutional rights. He is sued in official capacity.

18.     Defendant Charles Beatty is chief of staff (Army) in the Colorado National Guard. He is responsible for deprivations of constitutional rights. He is sued in official capacity.

19.     Defendant Keith Robinson is staff judge advocate in the Colorado National Guard. He is responsible for deprivations of constitutional rights. He is sued in official capacity.

20.     Defendant Laura Clellan is the Colorado National Guard adjutant general, and agency head. She is responsible for constitutional deprivations. She is sued in official capacity.

21.     Defendant Daniel Hokanson is chief of the National Guard Bureau, and agency head. He is responsible for deprivations of constitutional rights. He is sued in official capacity.

22.     Defendant John Whitley is acting secretary of the Army, and Department of Army agency head. He is responsible for constitutional deprivations. He is sued in official capacity.

23.     Defendant Lloyd Austin is secretary of Defense, and agency head. He is sued in his official capacity and is responsible for constitutional deprivations. Department of Defense is the agency that issued Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d).

## STATEMENT OF FACTS

**Black Lives Matter Protest Participation**

24.     On May 30, 2020, Plaintiff joined hundreds of others for a peaceful Black Lives Matter protest that began at the Capitol in Denver, Colorado, and that occurred the mid-afternoon in broad daylight, hours before curfew. The Black Lives Matter march protested police murders

of George Floyd, Breonna Taylor, Elijah McClain, and countless others. Denver Police, without warning or provocation, fired clouds of tear-gas at peaceful protesters, violating constitutional rights, and also violating Denver Police use of force policy. Plaintiff wrote an op-ed critical of the response to peaceful protest of police violence, published by *Denver Post* on June 4, 2020.

**Not on Orders, Not on Duty, Not in Uniform, Not in Breach of Law and Order**

25.      Plaintiff serves part-time as a captain and deputy staff judge advocate in the Colorado National Guard. Plaintiff has served since 2012 and deployed in 2018-19 to Middle East with 34th Infantry Division. On May 30, 2020, and subsequent dates, Plaintiff exercised his First Amendment right to peacefully participate in Black Lives Matter protests. Plaintiff was not on military orders, not on duty, not in uniform, and not in breach of law and order (Defendants have not claimed he was). Plaintiff peacefully participated in the protest, a few blocks from his home, in his personal capacity, carrying a handwritten cardboard sign that read "George Floyd," on one side, and "End Police Brutality," on other side. Plaintiff's *Denver Post* op-ed included a disclaimer that views expressed were his own, a disclaimer nearly identical to that included with his last *Denver Post* op-ed, on the murder of Jamal Khashoggi, without objection by Defendants.

**Black Lives Matter Protest Participation Investigation**

26.      On June 4, 2020, Defendant Beatty appointed colonel Christopher Lowman to investigate Plaintiff's Black Lives Matter protest participation and related *Denver Post* op-ed. Lowman found, on June 18, 2020, that the Black Lives Matter march was a "peaceful protest," that the Black Lives Matter march was not expected to result in violence, and did not result in violence except for the "unprovoked response by Denver Police." Lowman found that Plaintiff peacefully participated in the protest and authored op-eds "as an individual not in uniform and not in a pay status," thus violating no law or regulation. Lowman concluded that Plaintiff's Black

Lives Matter protest participation and op-eds were protected by First Amendment. Plaintiff was not informed of the favorable findings until July 12, 2020. Plaintiff wrote related op-ed published by *Colorado Newsline* on July 9, 2020. Plaintiff's *Colorado Newsline* op-ed included disclaimer that views expressed were his own, a disclaimer nearly identical to that included with his last two *Denver Post* op-eds regarding Black Lives Matter protests and the murder of Jamal Khashoggi.

**Black Lives Matter Protest Participation Retaliation**

27.     However, on July 12, 2020, Defendant Beatty overturned the carefully prepared findings and recommendations of his own investigating officer and directed Defendant Sandrock to reprimand Plaintiff for his Black Lives Matter protest participation and his *Denver Post* op-ed, citing Department of Defense Instruction 1325.06, Enclosure 3, para. 6(d). Without any evidence about the Black Lives Matter protest in which Plaintiff peacefully participated on May 30, 2020, other than Plaintiff's *Denver Post* op-ed published June 4, 2020, Defendant Beatty arbitrarily and capriciously found: "The IO did not correctly interpret DoDI 1325.06 pertaining to the likelihood of violence occurring at protests," and "violence was likely to occur." Notably, the investigating officer had found that Department of Defense Instruction 1325.06, Enclosure 3, para. 6(d), was not violated by Plaintiff's Black Lives Matter protest participation, and also found the provision did not apply to part-time members not on active duty. Defendant Beatty also overturned his own investigating officer's op-ed findings, contrary to the Colorado National Guard's findings of November 7, 2019 which found Plaintiff's *New York Times* letter/op-ed violated no law, policy, or regulation, and contained disclaimers similar to *Denver Post* and *Colorado Newsline* op-eds.

**First Reprimand for Black Lives Matter Protest Participation**

28.     On July 12, 2020, Defendant Sandrock reprimanded Plaintiff for his Black Lives Matter protest participation and *Denver Post* op-ed, citing Department of Defense Instruction

1325.06, Enclosure 3, para. 6(d). On July 16, 2020, Defendant Beatty appointed his own acting chief of staff, Christopher McKee, to again investigate Black Lives Matter protest participation, *Colorado Newsline* op-ed, and whistleblower complaints. The report was illegally withheld and modified by Defendants. On July 21, 2020, in response to Plaintiff's compliance with Defendant Sandrock's order to contact Colorado National Guard Public Affairs Office for guidance, public affairs officer Garrett Seddon wrote, "after discussing with the State PAO office, we concluded [disclaimers for letters/op-eds are] not addressed by DOD or Service public affairs regulations," and referred Plaintiff to attorney John Gallegos, who also declined to give official guidance.

29.     On August 14, 2020, in response to Plaintiff's appeal, Defendant Beatty defended Defendant Sandrock's reprimand by claiming all Black Lives Matter protests "begin peacefully and devolve into violent clashes with the police." Defendant Beatty also failed to provide any evidence that violent clashes with police occurred at the protest attended by Plaintiff. In fact, Defendants provided no evidence of that protest except Plaintiff's *Denver Post* and *Colorado Newsline* op-eds. On November 17, 2020, Defendant Sandrock denied Plaintiff's appeal of the reprimand without explanation. Defendant Sandrock thus failed to address the First Amendment violations, and other defects, that Plaintiff raised in appeals to Defendants Beatty and Sandrock.

**Second Reprimand for Black Lives Matter Protest Participation**

30.     On September 13, 2020 [dated September 11, 2020], Defendant Paul reprimanded Plaintiff for Black Lives Matter protest participation and *Colorado Newsline* op-ed, citing only Department of Defense Instruction 1325.06, Enclosure 3, para. 6(d). On September 24, 2020, Defendant Paul and his attorney, Rory Devlin, met with Plaintiff and his attorney. Defendant Paul defended the second reprimand by falsely claiming that Black Lives Matter protests are "inherently violent." Devlin failed to disclose that his civilian employer, then-district attorney

10

George Brauchler, was actively prosecuting Black Lives Matter protesters at the time, a conflict of interest. Devlin said the reprimand was also for Plaintiff's 2019 *New York Times* video op-ed. On December 5, 2020, Defendant Paul permanently filed his unconstitutional reprimand without addressing any of the clearly identified First Amendment and due process violations, and other legal deficiencies, raised in Plaintiff's timely appeals to Defendants Beatty, Sandrock, and Paul.

31.     Defendants Paul, Sandrock, and Beatty unconstitutionally targeted Plaintiff's *Denver Post* and *Colorado Newsline* op-eds related to Black Lives Matter protest participation while turning a blind eye to contrary viewpoints. Defendant Paul revealed viewpoint bias when he said Black Lives Matter protests are "inherently violent." Defendant Beatty revealed similar bias when he wrote to Plaintiff that Black Lives Matter protests "begin peacefully and devolve into violent clashes with the police." By contrast, Colorado National Guard did not investigate a January 24, 2021 *Denver Post* op-ed by colonel George Brauchler, a judge advocate in Plaintiff's unit, that referenced the National Guard in the title and Colorado National Guard and Brauchler's membership in the text, without disclaimer. Defendants also did not investigate Brauchler's prior *Denver Post* op-eds criticizing Black Lives Matter protests and the Governor, without disclaimer.

**Negative Evaluation for Black Lives Matter Protest Participation**

32.     On January 26, 2021, Defendant Beatty threatened, on behalf of himself and Defendant Robinson, to file a negative evaluation of Plaintiff based solely on Black Lives Matter protest participation, citing Department of Defense Instruction 1325.06, Enclosure 3, para. 6(d), and the portion of Defendant Sandrock's reprimand citing the same provision. Defendant Beatty and Defendant Robinson originally cited Plaintiff's whistleblower complaints as the basis for the negative ratings, but retracted that explanation, removed the whistleblower complaint references, and pretextually cited Plaintiff's Black Lives Matter protest participation after Plaintiff appealed.

On January 28, 2021, in response to Defendant Beatty's email of January 26, 2021, Defendant Clellan blocked Defendants Beatty and Robinson from filing the evaluation pending her review. On March 4, 2021, Defendants Beatty and Robinson officially filed the evaluation, by then based solely on Plaintiff's Black Lives Matter protest participation, with the Department of the Army.

**Agency Head Refuses to "Render Judicial Determinations on Constitutional Questions"**

33.     On October 15, 2020, Defendant Clellan, adjutant general and agency head, met with Plaintiff and his attorney and said that she could not discuss constitutional questions before Defendant Paul announced a filing decision regarding his reprimand, because Defendant Clellan was the "appeal authority." After Defendant Paul filed his reprimand December 5, 2020, Plaintiff appealed to Defendant Clellan on December 10, 2020, December 18, 2020, December 22, 2020, January 28, 2021, and February 6, 2021. On February 16, 2021, Defendant Clellan, via attorney John Gallegos, announced that she lacked the authority to reverse and rescind Defendant Paul's reprimand, referred "any further appeal for redress" to the chief of National Guard Bureau, and said she intended to start an "investigation into alleged procedural and administrative defects," but not alleged constitutional violations by Defendants Paul, Sandrock, Beatty, and Robinson. Defendant Clellan refused to "render judicial determinations on [any] constitutional questions … presented [to her] such as, 'Is DoDI 1325.06 facially overbroad under the First Amendment.'" On March 4, 2021, Defendant Hokanson also refused to address the constitutional violations, and referred Plaintiff back to Defendant Clellan and inspector general. The Colorado National Guard, Department of the Army, and Department of Defense inspectors general informed Plaintiff that they only investigate whistleblower reprisal and cannot investigate any constitutional violations.

**Ongoing Irreparable Constitutional and Concrete Harms**

34.     Plaintiff has suffered and will continue to suffer continuing concrete harms and

constitutional harms due to Department of Defense Instruction 1325.06, Enclosure 3, para. 6(d), and its application to Plaintiff's constitutionally protect Black Lives Matter protest participation. Plaintiff also has suffered and will continue to suffer ongoing concrete and constitutional harms from Defendants' unconstitutional targeting of Plaintiff's op-eds for their viewpoint and content.

35.     For the reasons set forth below, Department of Defense Instruction 1325.06, Enclosure 3, para. 6(d), is unconstitutional facially and as applied by Defendants to Plaintiff's Black Lives Matter protest participation, and deprives Plaintiff of essential constitutional rights.

## FIRST CLAIM FOR RELIEF

### FIRST AMENDMENT — FREEDOM OF SPEECH, ASSEMBLY, PRESS

36.     Plaintiff hereby incorporates and adopts all other paragraphs of this Complaint.

37.     The First Amendment states that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. The First Amendment prohibits federal agencies and officials from restricting freedom of speech, assembly, and press. The First Amendment applies to state officials and state agencies through the Fourteenth Amendment.

38.     Defendants Paul, Sandrock, Beatty, and Robinson have applied and Defendants continue to apply Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), to unconstitutionally restrict Plaintiff's Black Lives Matter protest participation, including but not limited to Plaintiff's participation in a peaceful march on May 30, 2020, when Plaintiff was not on any orders, not on duty, not in uniform, and not in breach of law and order, and about which Plaintiff wrote related op-eds published by *Denver Post* and *Colorado Newsline*, thus Defendants have deprived and caused Plaintiff to be deprived of his First Amendment rights to freedom of

speech, assembly, and press, with ongoing chilling effect on Plaintiff's protest participation.

39.     Defendants Paul, Sandrock, Beatty, and Robinson, violated Plaintiff's rights by frivolously investigating, officially reprimanding, and negatively evaluating Plaintiff explicitly and specifically for exercising his First Amendment rights to freedom of speech, assembly, and press, with continuing chilling effect on Plaintiff's protest participation and op-ed writing. The actions of Defendants Paul, Sandrock, Beatty, and Robinson, can reasonably be expected to chill a reasonable person from engaging in activity constitutionally protected by the First Amendment.

40.     Defendants Paul, Sandrock, Beatty, and Robinson, acted with reckless or callous indifference to the First Amendment rights of Plaintiff. Defendant Clellan refused to intervene, explicitly refusing to "render judicial determinations on [unanswered] constitutional questions."

41.     Further, the actions of Defendants Paul, Sandrock, Beatty, and Robinson are also inconsistent with Defendant Hokanson's message to National Guard members on MLK Jr. Day that civil rights and democracy "are not self-executing," "our Nation continues to grapple with issues about race, justice, and inequality," and "when we perpetuate or excuse bias, harassment, and exclusion in our ranks, we damage the very foundation of our organization," and Defendant Clellan's acknowledgment of "institutional racism in all branches of the Services." The police in Selma used "tear gas and horses and billy clubs against unarmed human beings who were simply marching for justice," and abuses continued until a judge found it unconstitutional in *Williams v. Wallace*, 240 F.Supp. 100, 105 (M.D. Ala. 1965). The Supreme Court affirmed that "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and government cannot "assume that every expression of a provocative idea will incite a riot," *Texas v. Johnson*, 491 U.S. 397, 409 (1989). Defendants Paul and Beatty's assertions that Black Lives Matter protests are "inherently violent"

and "begin peacefully and devolve into violent clashes with the police," pointing to police use of

tear gas against unarmed human beings who were simply marching for justice on May 30, 2020,

are consistent with then-President Trump's claim that Black Lives Matter is a "symbol of hate."

By the twisted logic arbitrarily and capriciously applied by Defendants, Dr. King and John Lewis

would have been punished for police abuses in Selma, had they been part-time military members.

In short, Defendants' retaliation for Plaintiff's peaceful Black Lives Matter protest participation

is not only unconstitutional but also perpetuates and excuses bias, harassment, and exclusion, is

the kind of institutional bias that perpetuates institutional racism, and is damaging to our nation.

42.    There is no known case law on either Department of Defense Instruction 1325.06,

Enclosure 3, paragraph 6(d), or Black Lives Matter protest participation by part-time members of

the military, but this Court found police violated First Amendment rights of Black Lives Matter

protesters in Denver over a series of days that included the protest in which Plaintiff participated.

Judge R. Brooke Jackson opined in his "Order on Plaintiffs' Motion for Temporary Restraining

Order" that the "plaintiffs were engaged in constitutionally protected activity through organized

political protest," "[police] use of excessive force likely caused injury sufficient to chill a person

of ordinary firmness from continuing to engage in that political protest," "[police] used physical

weapons and chemical agents to prevent not just peaceful demonstration, but also the media's

ability to document the demonstrations and plaintiffs' and third parties' ability to offer aid to

demonstrators," and "demonstrators' legitimate and credible fear of police retaliation is silencing

their political speech—the very speech most highly valued under the First Amendment." *Abay v.*

*City of Denver*, civil case no. 1:20-cv-01616-RBJ (D. Colo. June 5, 2020). Organized political

protest is a form of "classically political speech." *Boos v. Barry*, 485 U.S. 312, 318 (1988). Thus,

Plaintiff's peaceful Black Lives Matter protest participation is protected by First Amendment.

43.     All citizens have a right to hold and express their personal political beliefs. *See Cohen v. California*, 403 U.S. 15, 24 (1971). "It has long been clearly established that the First Amendment bars retaliation for protected speech and association." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1292 (10th Cir. 2008) (*quoting Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005)). Under ordinary constitutional analysis, the Tenth Circuit examines First Amendment retaliation claims under *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000), inquiring whether (1) Plaintiff was engaged in constitutionally protected activity; (2) Defendants caused Plaintiff to suffer injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) Defendant's actions were motivated by the protected activity. *Id.*

44.     Here, Plaintiff peacefully engaged repeatedly in constitutionally protected activity through organized Black Lives Matter protest and op-ed writing when not on orders, not on duty, and not in uniform. Defendant's escalating retaliation for Plaintiff's peaceful Black Lives Matter protest participation -- multiple investigations, multiple reprimands, negative evaluation -- citing Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d) in a conclusory fashion, caused and continues to cause concrete, irreparable injury sufficient to chill a person of ordinary firmness from continuing to engage in peaceful Black Lives Matter protests. Defendants caused Plaintiff to fear further retaliation from continuing to attend peaceful protests or submit op-eds to media such as *Denver Post* and *Colorado Newsline*. Plaintiff's legitimate and credible retaliation fears are silencing his political speech—the speech most highly valued by the First Amendment. Moreover, Defendants' statements that Black Lives Matter protests are "inherently violent" and "begin peacefully and devolve into violent clashes with the police," reveal Defendants' actions are also motivated by the content of Plaintiff's protests against police violence and racism. In short, Defendants violated Plaintiff's First Amendment rights under the Tenth Circuit analysis.

45.     It bears repeating that the Supreme Court has made clear that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) (*quoting Elrod v. Burns*, 427 U.S. at 373. Black Lives Matter demonstrations throughout the nation are ongoing, and Plaintiff is chilled from participating peacefully and writing about injustice by Defendants' application of Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d). If relief is not granted, Plaintiff's freedoms of speech, assembly, and press, will continued to be chilled and outright denied. Indeed, irreparable harm has already occurred in the form of investigations, reprimands, negative evaluation, and the suppression of speech; there is no reason such harms will not continue if relief is denied. Defendants would continue to apply Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), in the most restrictive manner possible, secure in their knowledge that retrospective claims take even more time, effort, and money to pursue.

46.     The Tenth Circuit recognized that "it is always in the public interest to prevent the violation of a party's constitutional rights," *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013); *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012). The Tenth Circuit particularly recognized a "strong public interest in protecting First Amendment values." *Cate v. Oldham*, 707 F.2d 1176, 1190 (10th Cir. 1983). It is also in Defendants' own policy in paragraph 3(b) of the very Department of Defense Instruction 1325.06 that they cite to violated Plaintiff's rights: "A Service member's right of expression should be preserved to the maximum extent possible." They have also ignored, in their ongoing deprivation of Plaintiff's First Amendment rights, Enclosure 1, paragraph (e): "The First Amendment to the Constitution of the United States."

47.     This Court set forth the standard for jurisdiction, review, and remedies available for deprivations of constitutional rights in *Saum v. Widnall*, 912 F.Supp. 1384 (D. Colo. 1996).

In a case involving constitutional claims brought against members of the military in their official capacities for declaratory and injunctive relief by an active-duty U.S. Air Force Academy cadet, this Court found subject matter jurisdiction where "claims arise under federal law." *Id*. at 1390. This Court, citing the Tenth Circuit's adoption, in *Lindenau v. Alexander*, 663 F.2d 68, 71 (10th Cir. 1981), of the two-part test for reviewability articulated in *Mindes v. Seaman*, 453 F.2d 197, 201-202 (5th Cir. 1971), then found the constitutional claims reviewable, opining that "civilian courts may review military matters when substantial constitutional rights are in jeopardy." *Saum v. Widnall*, 912 F.Supp. at 1391. This Court noted "exhaustion requirement should not, and does not appear to, apply to constitutional claims." *Id*. at 1391 n.7. *See also Lindenau*, 663 F.2d at 72 (first part of test met; review denied because claims "were not strong"). Shifting to the second part of the *Mindes* test, this Court found potential injury to the active-duty cadet passed the test because "Defendants' allegedly unconstitutional conduct would go unchecked and Saum would be unable to seek vindication of her civil rights," and any deference due does not bar review of violations of "fundamental constitutional rights." *Saum v. Widnall*, 912 F.Supp. at 1392. "There is no 'military exception' to the Constitution," and deference to military on constitutional claims occurs using "ordinary constitutional analysis." *Id*. at 1392 (*citing Steffan v. Aspin*, 8 F.3d 57, 62 (D.C. Cir. 1993). This Court distinguished the claims from Bivens causes of action for damages. *Saum v. Widnall*, 912 F.Supp. at 1392 n. 8. This Court properly applied ordinary constitutional analysis in weighing nature and strength of constitutional claims, applying close judicial scrutiny to plaintiff's sex discrimination claims. *See Frontiero v. Richardson*, 411 U.S. 677, 682 (1973). Ultimately, this Court found the claims reviewable "to the extent the equitable relief sought is in a form other than a monetary award." *Saum v. Widnall*, 912 F.Supp. at 1395. This Court's only hesitation was in granting declaratory relief where "plaintiff seeks no prospective relief" and did

not allege that "deprivations are ongoing or that she faces a threat of being harmed by them in the future." *Saum v. Widnall*, 912 F.Supp. at 1394. In this case, plaintiff seeks prospective relief, deprivations are ongoing, continues to face threats of future harm, and the injury is irreparable. The Tenth Circuit has also affirmed prospective relief for constitutional claims, brought pursuant to 42 U.S.C. § 1983, against National Guard commanders in named official capacities, was not barred by the Eleventh Amendment. *Nelson v. Geringer*, 295 F.3d 1082, 1099 (10th Cir. 2002). *Saum v. Widnall* and *Nelson v. Geringer*, both precedential constitutional cases, control here, where Plaintiff seeks prospective relief for deprivations of fundamental constitutional rights.

48.     Defendants' constitutional violations cause ongoing harm to Plaintiff.

## SECOND CLAIM FOR RELIEF

### FIRST AMENDMENT AND DUE PROCESS CLAUSES OF FIFTH AND FOURTEENTH AMENDMENTS — FACIALLY UNCONSTITUTIONAL

49.     Plaintiff hereby incorporates and adopts all other paragraphs of this Complaint.

50.     The First Amendment to the Constitution of the United States prohibits federal agencies and officials from restricting the freedom of speech, assembly, and press. The First Amendment applies to state officials and state agencies through the Fourteenth Amendment.

51.     Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), which broadly and unconstitutionally prohibits "members of the Armed Forces" from "participating in off-post demonstrations" if "violence is likely to result," and which is not subject to narrowing construction by any court or by agencies headed by Defendants Austin, Whitley, Hokanson, or Clellan, facially contravenes rights to freedom of speech and assembly, and can reasonably be expected to chill a reasonable person from engaging in activity protected by First Amendment.

52.     Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), was

unconstitutionally adopted by Defendants, and has and continues to be unconstitutionally applied by Defendants, specifically to restrict exercise of First Amendment rights to freedom of speech, assembly, and press, with ongoing chilling effect on Black Lives Matter protest participation and op-ed submission. There is no known case law on Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), or addressing peaceful protest participation by part-time members of the military, but this Court found that police violated the First Amendment rights of Black Lives Matter protesters in Denver over a series of days that included protest Plaintiff participated in, and ordered injunctive relief. *See Abay v. City of Denver*, civil case no. 1:20-cv-01616-RBJ, "Order on Plaintiffs' Motion for Temporary Restraining Order" (D. Colo. June 5, 2020). Thus, the speech that has been and continues to be restricted by Defendants and Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), is constitutionally protected, and the ongoing infringement of that speech inflicts irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

53.     "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. at 414. Thus, the Supreme Court has "not permitted the government to assume that every expression of a provocative idea will incite a riot, but have instead required careful consideration of the actual circumstances surrounding such expression, asking whether the expression 'is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.'" *Id*. at 409 (*quoting Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)) In holding unconstitutional a flag burning ban, the Supreme Court rejected the government's argument that it need only demonstrate "potential for a breach of the peace . . . because every flag burning necessarily possesses that potential." *Id*. The Court noted Texas could preserve the peace by enforcing its law prohibiting breaches of the peace. *Id*. at 410.

54.     Similarly, Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), has and continues to be applied by Defendants to prohibit Plaintiff from participating in off-post Black Lives Matter demonstrations even when not on orders, not on duty, not in a foreign country, not in breach of law and order, and not in uniform. Defendant Paul's spurious defense that Black Lives Matter protests are "inherently violent," and Defendant Beatty's defense, with no evidence, that Black Lives Matter protests "begin peacefully and devolve into violent clashes with the police," and thus that "violence is likely to result," if not read as racist, suggest Plaintiff should be prohibited from peacefully participating in Black Lives Matter protests because Black Lives Matter protests have the *potential* for violence to result. However, Defendants can punish any participation in violence by enforcing Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(c), which bars participation if "the activities constitute a breach of law and order." Consequently, no unprotected speech *not* covered by paragraph 6(c) is covered by paragraph 6(d). Thus, the overbroad and vague restriction on protest participation if "violence is likely to result," is unnecessary to preserve law and order, and is applied only as a vehicle to restrict protected speech.

55.     Governmental actions and laws that "target speech based on its communicative content are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015); *R. A. V. v. St. Paul*, 505 U. S. 377, 395 (1992); *Simon & Schuster v. Members of N.Y. State Crime Victims Board*, 502 U. S. 105, 115, 118 (1991). The Supreme Court, in *Reed v. Town of Gilbert*, specified the test for whether speech is content based: "The test for whether speech is content based is whether a law applies to particular speech because of the topic discussed or the idea or message expressed. . . . Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on

the message a speaker conveys, and, therefore, are subject to strict scrutiny. Our precedents have

also recognized a separate and additional category of laws that, though facially content neutral,

will be considered content-based regulations of speech: laws that cannot be 'justified without

reference to the content of the regulated speech.' . . . Those laws, like those that are content

based on their face, must also satisfy strict scrutiny." *Reed v. Town of Gilbert*, 135 S. Ct. at 2227

(*quoting Ward v. Rock Against Racism*, 491 U. S. 781, 791 (1989). When government "targets

not subject matter but particular views taken by speakers on a subject, the violation of the First

Amendment is all the more blatant. Viewpoint discrimination is thus an egregious form of

content discrimination." *Rosenberger v. Rectors and Visitors of the University of Virginia*, 515

U.S. 819, 829 (1995). Here, Department of Defense Instruction 1325.06, Enclosure 3, paragraph

6(d), has and continues to be applied to Plaintiff in a way that appears to define regulated speech

by its function or purpose, and also cannot be justified without reference to the speech's content.

On its face, the provision that "violence is likely to result," which has not been narrowed in its

construction by any court or by Defendants, and applied to target Plaintiff's protected speech,

fails to specify who determines if violence is likely to result or how; whether the determination

can be made in hindsight, as Defendants did here, or whether the future tense matters; whether

military members must participate in or incite violence; any standard for determining likely; and

whether violence includes unconstitutional violence by police, as Defendants have asserted here.

In short, if the provision defines anything, which is dubious, it appears to define regulated speech

by *potential* effects on listeners, applied in hindsight, in the unfettered discretion of the decider.

Thus, it is wholly undefined, overbroad, and so vague as to make violation impossible to avoid.

56.     Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), is thus

unconstitutional on its face and as applied to Plaintiff's Black Lives Matter protest participation.

## THIRD CLAIM FOR RELIEF

## ADMINISTRATIVE PROCEDURE ACT

57.     Plaintiff hereby incorporates and adopts all other paragraphs of this Complaint.

58.     The Administrative Procedure Act, 5 U.S.C. §§ 702, 704, 706, authorizes judicial review of agency actions which do not comply with the Constitution or laws of the United States. The law specifically provides that agency actions which are arbitrary, capricious, discriminatory, abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory authority or short of statutory right; and without observance of procedure required by law; constitute legal violations. 5 U.S.C. § 706.

59.     Defendants' final agency actions as set forth above are arbitrary, capricious, discriminatory, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and without observance of procedure required by law, and constitute legal violations of the Administrative Procedure Act, 5 U.S.C. §§ 702, 704, 706.

60.     Where, as in this case, the Administrative Procedure Act applies, decisions have become final, following appeals to Defendants Beatty, Sandrock, Paul, Clellan, and Hokanson. Defendant Clellan, as agency head of the Colorado National Guard, refused to "render judicial determinations on [any] constitutional questions … presented," highlighting need for "judicial" review. Defendant Hokanson, as agency head of National Guard Bureau, affirmed that position. Further appeals short of judicial review are futile. They are also not required where, as here, they are not required by any statute, and Defendants' unconstitutional administrative actions are not made inoperative pending further appeals. *See Darby v. Cisneros*, 509 U.S. 137, 154 (1993).

61.     Defendants' constitutional violations cause ongoing harm to Plaintiff.

## FOURTH CLAIM FOR RELIEF

### DECLARATORY RELIEF

62.     Plaintiff hereby incorporates and adopts all other paragraphs of this Complaint.

63.     The above allegations and claims constitute an actual case and controversy between Plaintiff and Defendants, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, thus authorizes the Court to enter declaratory relief against the Defendants on the above claims.

64.     Plaintiff is entitled to a Declaratory Judgment that Defendants, in adopting and enforcing Department of Defense Instruction 1325.06, Enclosure 3, para. 6(d), and as applied by Defendants to Plaintiff's peaceful Black Lives Matter protest participation, violated the U.S. Constitution and laws, and continue to violate Plaintiff's constitutional rights as stated above.

65.     Plaintiff is entitled to a Declaratory Judgment that Defendants, by targeting Plaintiff's exercise of freedom of speech and assembly due to Plaintiff's viewpoint and content, specifically Plaintiff's Black Lives Matter protest participation and op-eds, violated the U.S. Constitution and laws, and continue to violate Plaintiff's constitutional rights as stated above.

66.     Alternatively, should this Court find Declaratory Judgments to be insufficiently prospective, this Court should treat this constitutional claim as action in the nature of mandamus under 28 U.S.C. § 1361. *See, e.g., Saum v. Widnall*, 912 F.Supp. 1384, 1395 (D. Colo. 1996).

67.     Defendants' constitutional violations cause ongoing harm to Plaintiff.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

68.     A declaration that Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), is unconstitutional as applied by Defendants to Plaintiff's peaceful Black Lives Matter protest participation on May 30, 2020, and any similar protest participation in the future;

69.     A declaration that Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), which prohibits "members of the Armed Forces" from "participating in off-post demonstrations" if "violence is likely to result," which is not limited by narrowing construction, is facially unconstitutional, vague, and overbroad, under First, Fifth, Fourteenth Amendments;

70.     A declaration that Defendants Paul and Sandrock violated Plaintiff's substantial constitutional rights when they applied Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), to officially reprimand Plaintiff for his Black Lives Matter protest participation, when Plaintiff was not on orders, not on duty, not in uniform, and not in breach of law and order;

71.     A declaration that Defendants Beatty and Robinson violated Plaintiff's substantial constitutional rights when they applied Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), to negatively evaluate Plaintiff for his Black Lives Matter protest participation, when Plaintiff was not on orders, not on duty, not in uniform, and not in breach of law and order;

72.     A preliminary and permanent injunction enjoining enforcement of Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), as unconstitutional as applied to the Plaintiff's Black Lives Matter protest participation by Plaintiff, and similar protest participation;

73.     A preliminary and permanent injunction enjoining enforcement of Department of Defense Instruction 1325.06, Enclosure 3, paragraph 6(d), as facially unconstitutional;

74.     A preliminary and permanent injunction, in the nature of mandamus, enjoining Defendants from taking adverse action or withholding favorable action against Plaintiff based in whole or in part on peaceful Black Lives Matter protest participation or op-eds, and mandating Defendants remove the reprimands and evaluation and timely consider Plaintiff for promotion;

75.     An award of reasonable attorneys' fees and costs as allowed by law; and

76.     Further declaratory and injunctive relief that this Court deems just and proper.

Dated: March 16, 2021

By:   /s/ Alan H. Kennedy_____
Alan H. Kennedy, Attorney at Law
1975 North Grant Street, Unit 421
Denver, CO 80203
Phone: (303) 345-3397
alan.kennedy@aya.yale.edu

/s/ James M. Branum_____
James M. Branum, Attorney at Law
Law Firm of James M. Branum
P.O. Box 721411
Oklahoma City, OK 73172
Phone: (405) 494-0562
girightslawyer@gmail.com

/s/ Jason P. Steck_____
Jason P. Steck, Attorney at Law
Law Office of Jason Steck
525 Park Street, Suite 320
St. Paul, MN 55103
Phone: (763) 402-1829
jason@jasonstecklaw.com

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this date, a copy of Plaintiff's **Complaint for Declaratory and**

**Injunctive Relief** and Summons has been served by U.S.P.S. Certified Mail on the following:

Douglas Paul, Assistant Adjutant General, Colorado National Guard
6848 South Revere Parkway, Centennial, CO 80112

Richard Sandrock, JFHQ Commander, Colorado National Guard
6848 South Revere Parkway, Centennial, CO 80112

Charles Beatty, Chief of Staff (Army), Colorado National Guard
6848 South Revere Parkway, Centennial, CO 80112

Keith Robinson, Staff Judge Advocate, Colorado National Guard
6848 South Revere Parkway, Centennial, CO 80112

Laura Clellan, Adjutant General, Colorado National Guard
6848 South Revere Parkway, Centennial, CO 80112

Daniel Hokanson, Chief of the National Guard Bureau
1636 Defense Pentagon, Suite 1E169, Washington, DC 20301

John Whitley, Acting Secretary of the Army
101 Army Pentagon, Washington, DC 20310

Lloyd Austin, Secretary of Defense
1000 Defense Pentagon, Washington, DC 20301

Merrick Garland, Attorney General of the United States
950 Pennsylvania Avenue, NW, Washington, DC 20530

Matthew T. Kirsch, Acting U.S. Attorney, District of Colorado (c/o civil-process clerk)
1801 California Street, Suite 1600, Denver, CO 80202

Phil Weiser, Attorney General of Colorado (c/o LeeAnn Morrill)
1300 North Broadway, 10th Floor, Denver, CO 80203

Dated: March 16, 2021

By:     /s/ Alan H. Kennedy
        Alan H. Kennedy, Attorney at Law
        1975 North Grant Street, Unit 421
        Denver, CO 80203
        Phone: (303) 345-3397
        alan.kennedy@aya.yale.edu