**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00772-WJM-MEH

ALAN KENNEDY,

     Plaintiff,

v.

DOUGLAS PAUL, Assistant Adjutant General, Colorado National Guard;
RICHARD SANDROCK, JFHQ Commander, Colorado National Guard;
CHARLES BEATTY, Chief of Staff (Army), Colorado National Guard;
KEITH ROBINSON, Staff Judge Advocate, Colorado National Guard;
LAURA CLELLAN, Adjutant General, Colorado National Guard;
DANIEL HOKANSON, Chief of the National Guard Bureau;
CHRISTINE WORMUTH, Secretary of the Army; and
LLOYD AUSTIN, Secretary of Defense,

     Defendants.

---

**DEFENDANTS' JOINT MOTION TO DISMISS**

---

In the First Amended Complaint ("FAC"), ECF No. 13, Plaintiff, a member of the Colorado Army National Guard ("COARNG"), challenges three military personnel actions—an informal reprimand, a second reprimand, and an allegedly negative evaluation. The informal reprimand has been permanently destroyed and the COARNG has acknowledged that it was issued in error. Plaintiff is still pursuing intra-military appeals of the second reprimand and the evaluation. He seeks an order directing the military to remove the challenged personnel actions from his records and prohibiting the military from taking such actions in the future. He also seeks an order invalidating, as unconstitutional, a Department of Defense Instruction that he claims was the basis for the personnel actions.

1

Plaintiff's claims all fail on multiple grounds and should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). His challenges to the informal reprimand are moot now that it has been destroyed and is acknowledged to have been issued in error. The other two personnel actions—the second reprimand and the allegedly negative evaluation—are the subject of ongoing intra-military appeals and thus are not reviewable by the Court while Plaintiff finishes exhausting his appeals. Moreover, even if exhausted, such personnel actions are not judicially reviewable under the controlling legal standards. He also lacks standing to challenge the Department of Defense Instruction because it does not apply to him or to the conduct described in the FAC. Finally, several of his claims have fatal defects and fail to state a claim.

Pursuant to WJM Civ. Practice Standard III.D.1, undersigned counsel conferred with Plaintiff and his counsel in a phone conversation and follow-up correspondence concerning the relief requested here and the factual bases for such relief. Plaintiff opposes the motion.

## FACTUAL BACKGROUND

I.        **Plaintiff's Allegations and Claims.**

Plaintiff serves part-time as a Captain and a Judge Advocate in the COARNG. *See* FAC at ¶ 14. According to the FAC, on May 30, 2020, Plaintiff participated in a Black Lives Matter protest at the Capitol building in Denver, Colorado. *Id.* at ¶ 24. Plaintiff then wrote an op-ed article in the *Denver Post* on June 4, 2020, discussing his participation in the protest. *Id.*

On June 4, an officer was appointed to investigate Plaintiff's actions. *Id.* at ¶ 26. On July 9, 2020, Plaintiff wrote another op-ed, this time in the *Colorado Newsline*, titled "Why is the National Guard investigating peaceful protests?" *Id.*; *see also* ECF No. 13-2. The op-ed discussed complaints that Plaintiff had filed within his chain of command, accused two generals

2

of issuing "gag orders" against him, and criticized both the investigation and other actions taken by Plaintiff's chain of command, calling them "frivolous," among other things.  *See id.*

*The first reprimand.*  On July 12, 2020, Plaintiff received a reprimand from Defendant Major Sandrock for his protest participation, among other things.  FAC at ¶ 27.  The reprimand was based in part on Department of Defense Instruction 1325.06, Enclosure 3, Paragraph 6(d) (the "Instruction"), which prohibits participation in off-post demonstrations under circumstances including if "[v]iolence is likely to result."  ECF No. 13-4 at 8; ECF No. 13-5 at 10.  The Letter of Reprimand was to remain "locally-filed" in the possession of Major Sandrock for one year, at which time it would be destroyed if no similar negative incidents occurred.  ECF No. 13-5 at 10.

*The second reprimand.*  On September 13, 2020, Plaintiff received a second reprimand from Defendant Brigadier General Paul.  *See* ECF No. 13-6 at 1-2.  Plaintiff alleges that this second reprimand was also based on his protest participation, FAC at ¶ 30, but a copy of the General Officer Memorandum of Reprimand ("GOMOR") attached to the FAC identifies the *Colorado Newsline* op-ed as the sole basis.  *See* ECF No. 13-6 at 1-2.  The GOMOR found that the op-ed contained false statements and misrepresentations that depicted the COARNG "in a damaging manner," and that the misrepresentations "disrespect the chain-of-command . . . and are a clear attempt to exert pressure on the chain of command[.]"  *Id.* at 1.  The GOMOR also found that Plaintiff's conduct in writing the op-ed called "into serious question [his] judgment and professionalism, as well as [his] basic loyalty to the values of the United States Army and the COARNG."  *Id.*  Plaintiff alleges the GOMOR was "permanently filed."  FAC at ¶ 30.

*The allegedly negative evaluation.*  Plaintiff alleges that on March 4, 2021, COARNG Chief of Staff Charles Beatty and Staff Judge Advocate Keith Robinson filed a negative

evaluation of Plaintiff with the Department of the Army.  *Id.* at ¶ 32.

*The claims.*  In the FAC, Plaintiff asserts four claims.  Claim One asserts that the personnel actions violate the First Amendment.  Claim Two challenges the Instruction, claiming that—both facially and as applied to him—it violates the First Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments.  Claim Three asserts, under the Administrative Procedure Act, that the personnel actions are final agency actions that are arbitrary, capricious, and not in accordance with law.  Claim Four does not identify a cause of action but states that Plaintiff seeks declaratory relief.  *See* FAC at ¶¶ 68-74.

## II.    The Status of the Intra-Military Reviews

*The administrative investigation.*  On February 16, 2021—before this lawsuit was filed—Plaintiff was informed that the Adjutant General of the Colorado National Guard,[1] Defendant Brigadier General Clellan, intended to open an investigation into several of Plaintiff's complaints.  *See id.* at ¶ 33; *see also* ECF No. 13-8 at 1 (email confirming investigation would be opened).  On March 12, 2021, four days prior to Plaintiff's filing of this lawsuit, the Adjutant General formally appointed an Investigating Officer pursuant to Army Regulation 15-6[2] to conduct an administrative investigation into many of Plaintiff's claims, including challenges to the Letter of Reprimand.  *See* Ex. 1, Appointment Memo.

*Guidance related to the Instruction.*  On April 17, 2021, the Adjutant General issued an order withdrawing enforcement of the Instruction to her authority.  She also stated that she would

---

[1] The Adjutant General is the most senior military officer and administrative head of the Colorado National Guard.  *See* C.R.S. § 28-3-105.  She is appointed by the Governor, who serves as the Commander in Chief.  *See* C.R.S. §§ 28-3-104, 28-3-105.

[2] This rule is available at armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/r15_6.pdf (last reviewed July 22, 2021).

not take any disciplinary or other adverse actions pursuant to the Instruction during the pendency of the investigation.  Ex. 2, April 17, 2021 Order.

On July 26, 2021, the National Guard Bureau, in consultation with the Department of Defense's Office of Legal Policy,[3] issued a memorandum to all states, territories, and the District of Columbia explaining that the Instruction is applicable "only to National Guard service members in a title 10 duty status under federal command and control."  Ex. 3, NGB Memorandum.  In other words, the Instruction applies only to National Guard service members who are called into active duty by the federal government.

*The Adjutant General's findings on the administrative investigation.*  On July 30, 2021, the Adjutant General issued her actions in response to the findings and recommendations of the Investigating Officer.  Ex. 4, Action by Approving Authority.  The Adjutant General found that—in light of the guidance from the Department of Defense regarding the applicability of the Instruction—the Instruction did not apply to Plaintiff and the Letter of Reprimand was therefore improper.  *Id.* at 5-6, 7, 9-12, 25-26.  The Adjutant General confirmed that the Letter had been permanently destroyed.  *Id.* at 6; *see also* Ex. 5, Decl. of Maj. Sandrock, at ¶ 3.  She further stated that guidance would be issued to ensure that commanders are aware that the Instruction applies only to National Guard service members serving on federal active duty.  Ex. 4 at 6.

*Appeal of the second reprimand (the GOMOR).*  Plaintiff has appealed the GOMOR to the Department of the Army Suitability Evaluation Board.[4]  Ex. 6, Decl. of Timothy O. Mazie, at

---

[3] The Office of Legal Policy is a component of the Office of the Secretary of Defense and is the proponent of the challenged Instruction.
[4] AR 600-37 provides that "[s]oldiers who believe unfavorable information filed in their [personnel record] is untrue or unjust may submit an appeal to request the removal of that

¶¶ 3-4.  The appeal remains pending.  *Id.* at ¶ 6.  The Board is empowered to make recommendations for removal, alteration, or transfer of unfavorable information entered in a service member's personnel record.  AR 600-37, Section 7-1.

*Appeal of the evaluation*.  Plaintiff has also appealed the evaluation.  Ex. 6 at ¶¶ 3, 5. That appeal remains pending before the Army Review Board Agency.  *Id.* at ¶ 6.  The appeal may result in amendment of Plaintiff's records and reconsideration for promotion, if appropriate. *See* AR 623-3, Section III, 4-7(i).[5]

If Plaintiff is unsatisfied with the decisions rendered on either of his appeals, he may further appeal to the Army Board for Correction of Military Records.  Ex. 6 at ¶ 7.

## LEGAL STANDARD

*12(b)(6) Standard.*  To state a claim on which relief can be granted, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Conclusory allegations are not presumed true, *id.*, nor are allegations contradicted by exhibits or documents incorporated into the complaint.  *See, e.g.*, *Estate of Ronquillo v. City and County of Denver*, 720 F. App'x 434, 437 (10th Cir. 2017).

*12(b)(1) Standard.*  A challenge to subject-matter jurisdiction can be raised at any stage, and the party invoking jurisdiction bears the burden of proof.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted).  If a party makes a factual attack to subject-matter jurisdiction, the court need not presume the truthfulness of the allegations.  *See Stuart v. Colo. Interstate Gas*

---

information."  Section 6-3(a)(4), *available at* armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/ web/ARN13482_R600_37_FINAL.pdf (last reviewed July 22, 2021).
[5] This rule is available at armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/ ARN14342_AR623-3_FINAL.pdf (last reviewed July 22, 2021).

*Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (citing *Holt v. U.S.*, 46 F.3d 1000, 1002 (10th Cir.

1995)).  Rather, the court has wide discretion to consider affidavits and other documents.  *Id.*

## ARGUMENT

Each of Plaintiff's claims fail.  He does not have standing to pursue a challenge to the

Instruction's constitutionality.  Moreover, such a challenge is also moot because there is no

dispute the Instruction did not and does not apply to Plaintiff's conduct in his current status.

Plaintiff's claims regarding the Letter of Reprimand are also moot because the COARNG has

both acknowledged that the Letter was issued in error and permanently destroyed it.  Finally,

Plaintiff's claims regarding the GOMOR and the evaluation are not reviewable because: (a) they

are the subjects of pending intra-military appeals and (b) the factors that this Court must consider

also weigh heavily against review.  Finally, even if the personnel actions were reviewable,

Plaintiff has failed to state a claim under Rule 12(b)(6) for numerous reasons.

### I.    The Court lacks jurisdiction to hear the constitutional challenges because the Instruction does not apply to Plaintiff's conduct.

Plaintiff brings facial and as-applied constitutional challenges to the Instruction.  *See*

FAC at ¶¶ 68-69, 72-73.  "A facial challenge considers the restriction's application to all

conceivable parties, while an as-applied challenge tests the application of that restriction to the

facts of a plaintiff's concrete case."  *iMatter Utah v. Njord*, 774 F.3d 1258, 1264 (10th Cir. 2014)

(internal quotations and citations omitted).  Plaintiff seeks declarations that the Instruction is

unconstitutional and an injunction enjoining its future enforcement.  FAC at ¶¶ 68-69, 72-73.

Plaintiff's challenge fails because he lacks standing and, alternatively, the claims are moot.

### A.  Plaintiff lacks standing to challenge the Instruction.

To pursue a constitutional challenge to the Instruction, Plaintiff must satisfy the standing

7

requirements of injury-in-fact, causation, and redressability.  *See, e.g.*, *Winsness v. Yocom*, 433 F.3d 727, 728 (10th Cir. 2006).  Plaintiff lacks standing to pursue a challenge to the Instruction because it does not apply to him or proscribe the conduct at issue in the FAC.

Department of Defense Instructions do not apply to service members who are not under federal command and control, unless a particular instruction explicitly states otherwise.  Based on this rule, the Department of Defense, through the National Guard Bureau, recently issued a memorandum to all National Guard units explaining that the challenged Instruction applies only to National Guard service members who are under federal command and control.[6]  Ex. 3.

Members of state National Guard units are not under federal command and control unless they are ordered into active duty by the federal government.  *See Perpich v. Dep't of Defense*, 496 U.S. 334, 345 (1990); Colo. Rev. Stat. § 28-3-204 (providing that when the Colorado National Guard is called into active military service of the United States, they are "relieved from duty in the National Guard of this state . . . . Upon being relieved from such duty in the military service of the United States, all such individuals and units shall revert to their Colorado National Guard status.").  Here, Plaintiff was not in any duty status, let alone in active duty under federal command and control, at the time of the events described in the FAC.  *See* FAC at ¶¶ 1, 2, 25, 44, 54; *see also* ECF No. 13-5 at 4 (Plaintiff "was not on active duty or drilling, not in uniform, and not in a paid status").  Thus, as the Department of Defense and COARNG have acknowledged, the Instruction does not apply to Plaintiff or the conduct at issue here.

---

[6] In other words, the challenged Instruction does not apply because it does not state that it applies to National Guard members who are not under federal command and control.  *See* ECF No. 13-4; *compare, e.g.*, Department of Defense Directive 1344.10 ¶ 2 (Feb. 19, 2008) ("Paragraph 4.3. applies to members of the National Guard, even when in a non-Federal status."), *available at* https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodd/134410p.pdf.

Accordingly, Plaintiff does not have standing to challenge the constitutionality of the Instruction because he cannot establish causation, redressability, or a credible threat of future enforcement.  With respect to causation, Plaintiff must show his injury is "fairly traceable to the challenged action of the defendant."  *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005) (quoting *Lujan v. Def's of Wildlife*, 504 U.S. 555, 560 (1992)).  Here, Plaintiff's alleged injury was caused by an error made by the COARNG—an error which it has since acknowledged.  *See* Ex. 4 at 5-6, 7, 9-12, 25-26.  Because Plaintiff's conduct was not proscribed by the regulation, any alleged injuries are not "fairly traceable to the challenged action"—the Instruction.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see also Competitive Enter. Inst. v. U.S. Dep't of Transp.*, 856 F.2d 1563, 1565 (D.C. Cir. 1988) (injury must be "fairly traceable to (i.e., caused by) the challenged regulation").  For the same reasons, Plaintiff cannot show redressability: neither an order enjoining enforcement of the Instruction nor a declaration that it is unconstitutional will redress his alleged injuries.

Moreover, Plaintiff cannot establish the credible threat of future enforcement necessary to pursue his requested declaratory and injunctive relief in light of the Department of Defense's conclusive determination that the Instruction applies only to National Guard members under federal command.  *See PeTA v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002) (no standing to challenge constitutionality of statute when statute did not apply to plaintiff's conduct).  Prospective injunctive and declaratory relief must be based upon "certainly impending" injury.  *Amnesty Int'l*, 568 U.S. at 398; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (requiring showing of imminent likelihood that plaintiff "will again be wronged in a similar way" to obtain prospective relief).  Accordingly, even when an individual has been charged or threatened with

prosecution for past conduct, a party may not bring prospective constitutional challenges to statutes or regulations absent a credible threat of future enforcement.  *See, e.g.*, *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007); *Winsness*, 433 F.3d at 732-34; *D.L.S. v. Utah*, 374 F.3d 971, 974-75 (10th Cir. 2004).  Simply put, Plaintiff cannot establish a credible, imminent threat of future enforcement because the Department of Defense and COARNG acknowledge that the Instruction does not apply to the conduct at issue here.  As a result, Plaintiff cannot meet his burden to establish standing to seek his requested prospective declaratory and injunctive relief.

This principle—that a party lacks standing to challenge a regulation that has been determined to be inapplicable to him—is reinforced by the "fundamental and longstanding principle of judicial restraint [that] requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988).  Standing, like constitutional avoidance, "assures that 'there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party.'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  For that reason, the Supreme Court has emphasized that the "standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Amnesty Int'l*, 568 U.S. at 408.  Here, Plaintiff lacks standing to obtain what would amount to an advisory opinion on the constitutionality of a regulation—the challenged Instruction—that does not apply to him.[7]

---

[7] Plaintiff himself has likewise argued that the Instruction does not apply. *See, e.g.*, ECF No. 13-5 at 18 (asserting that the Instruction "does not apply here as I 'was not on any duty status.'").

**B.  Plaintiff's constitutional challenges to the Instruction are moot.**

Alternatively, the Court should dismiss Plaintiff's constitutional challenges to the Instruction as moot.  *See Mink*, 482 F.3d at 1256 ("[A] live controversy must remain throughout the litigation." (cleaned up)).  A controversy becomes moot where, among other things, the government acts to repudiate previous action taken against the plaintiff, withdraws or alters the policies being challenged, and/or provides written documentation precluding future prosecution.  *See, e.g.*, *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 881 (10th Cir. 2019) (withdrawal or alteration of policies and declarations eliminating threat of prosecution sufficient to moot claims); *Mink*, 482 F.3d at 1256-57 (challenge moot where district attorney issued opinion letter repudiating intent to prosecute plaintiff); *Winsness*, 433 F.3d at 736 (affidavits from prosecutors indicating no intent to prosecute under challenged statute mooted claims).

Here, Plaintiff can no longer establish a live controversy.  The Department of Defense has determined that the Instruction does not apply to National Guard members in Plaintiff's status and COARNG has implemented that determination.  *See* Ex. 3; *see also, e.g.*, Ex. 4 at 5-6.  The Adjutant General has further stated that the guidance will be issued to ensure that COARNG commanders are aware that the Instruction does not apply to service members who are not on federal active duty under federal command and control.  *See, e.g.*, Ex. 4 at 6.  Thus, there can no longer be any dispute that the Instruction does not apply to Plaintiff's conduct.  As a result, his constitutional challenges to the Instruction are moot.

## II.      Plaintiff's challenge to the Letter of Reprimand is moot.

Plaintiff's claims based on the Letter of Reprimand are moot.  To begin with, the Letter has been permanently destroyed, so there is nothing for Plaintiff to challenge.  Ex. 5 at ¶ 3.

Moreover, in light of the guidance that the Instruction does not apply to Plaintiff, the Adjutant General has acknowledged that the Letter was issued in error.  *See, e.g.*, Ex. 4 at 5-6.

Where a party to a lawsuit has withdrawn a challenged action, "'a plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured by the defendant in the future.'"  *Unified Sch. Dist.*, 491 F.3d at 1147 (quoting *Cox*, 43 F.3d at 1348) (withdrawal of subject records request eleven months after lawsuit was filed mooted claim for declaratory relief); *see also McKeen v. Forest Serv.*, 615 F.3d 1244, 1255-56 (10th Cir. 2010) (request for declaratory relief related to permit that had since been superseded was moot).  Indeed, "government self-correction provides a secure foundation for mootness so long as it seems genuine."  *Prison Legal News*, 944 F.3d at 881 (cleaned up). Here, the Adjutant General—the COARNG's highest-ranking officer—initiated an investigation into Plaintiff's complaints prior to the filing of this lawsuit; issued an order on April 17, 2021, stating that she would not enforce the Instruction during the pendency of the administrative investigation; and acknowledged that the Letter of Reprimand was issued in error and confirmed that it had been permanently destroyed.  These actions demonstrate that Plaintiff is unlikely to again be similarly reprimanded.

There is a secure foundation for mootness now that the Letter of Reprimand has been not only permanently destroyed, but also acknowledged to have been erroneous.  Indeed, even declaratory relief is unavailable here, because any opinion on the destroyed Letter of Reprimand would amount to a retrospective, advisory opinion.  *See Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011); *Unified Sch. Dist.*, 491 F.3d at 1150 ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." (cleaned

12

up)).  Accordingly, Plaintiff's requests for declaratory and injunctive relief related to the Letter of Reprimand are moot and should be dismissed under Rule 12(b)(1).

### III.      Plaintiff's challenges to the GOMOR and the OER are not justiciable.

Plaintiff also challenges the second reprimand (the GOMOR) and his evaluation, seeking a declaration that the GOMOR violated his constitutional rights and an injunction mandating that Defendants remove the GOMOR and the evaluation.  *See* FAC at ¶¶ 70, 74.  As detailed below, this Court does not have subject matter jurisdiction to review either action.

"Discretionary decisions of the military are not subject to review by civilian courts." *Schulke v. U.S.*, 544 F.2d 453, 455 (10th Cir. 1976) (citations omitted).  "[C]ourts afford the political branches of government a particularly high degree of deference in the area of military affairs, because the Constitution expressly confers authority over the military on the executive and legislative branches."  *Custer Cnty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1031 (10th Cir. 2001) (citations omitted).  Particularly in the context of military personnel issues, including disciplinary actions, the Supreme Court has explained:

> The military is a specialized society separate from civilian society with laws and traditions of its own (developed) during its long history . . . To prepare for and perform its vital role, the military must insist upon a respect for duty and a discipline without counterpart in civilian life.  The laws and traditions governing that discipline have a long history; but they are founded on unique military exigencies as powerful now as in the past.

*Schlesinger v. Councilman*, 420 U.S. 738, 757 (1975) (cleaned up).  Indeed, "'there are thousands of routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or jurisdiction of courts to wrestle with.'"  *DeRito v. United States*, 851 F. App'x 860, 861 (10th Cir. 2021) (quoting *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993)).

The Tenth Circuit has adopted a two-part test to determine whether and when a court may review military action. *Lindenau v. Alexander*, 663 F.2d 68, 71 (10th Cir. 1981); *see DeRito*, 851 F. App'x at 862 (explaining and applying *Lindenau*'s two-part test). The first part requires that (a) the case involves an alleged violation of constitutional right, statute, or regulation and (b) intra-military remedies and appeals have been exhausted. *Id.*; *see also DeRito*, 851 F. App'x at 862. If both conditions are met, then the court in the second part of the test must weigh four factors: (a) the nature and strength of the challenge to the military decision, (b) the potential injury to the plaintiff if review is refused, (c) the type and degree of anticipated interference with the military function, and (d) the extent to which military discretion or expertise is involved in the challenged decision. *Id.*

Under this test, the challenged GOMOR and evaluation are non-reviewable because under the test's first part, Plaintiff has not exhausted his intra-military remedies—he is currently appealing both personnel actions[8]—and because, under the test's second part, the four factors counsel against judicial intervention.

### A. Plaintiff's ongoing intra-military appeals preclude review.

Plaintiff's challenges to the evaluation and GOMOR are non-reviewable because he has not exhausted available intra-military corrective measures. *Lindenau*, 663 F.2d at 71 (citing *NeSmith v. Fulton*, 615 F.2d 196, 201 (5th Cir. 1980)); *see also Burkins v. U.S.*, 865 F. Supp. 1480, 1486 (D. Colo. 1994) (to establish subject matter jurisdiction over claims related to military record, "a person must first exhaust the administrative remedies provided by the military

---

[8] Plaintiff has initiated intra-military appeals of both the GOMOR and the evaluation, and both appeals are still pending. Ex. 6 at ¶¶ 3-6. Even after decisions are rendered on those appeals, Plaintiff may further appeal to the Army Board of Correction for Military Records. *Id.* at ¶ 7.

service") (citing *Thornton v. Coffey*, 618 F.2d 686, 692 (10th Cir. 1980)).  The exhaustion requirement gives "the military an opportunity to exercise its own expertise, and to correct its own errors."  *Thornton*, 618 F.2d at 692.

This exhaustion requirement applies to constitutional claims.  *Lindenau*, in which the Tenth Circuit adopted the two-part test requiring exhaustion, involved a constitutional challenge to a military regulation.  *See* 663 F.2d at 71-72.  Even before *Lindenau*, the Tenth Circuit expressly required exhaustion of constitutional claims in the military context.  *See Noyd v. McNamara*, 378 F.2d 538, 539 (10th Cir. 1967) (upholding district court's dismissal of constitutional claims because plaintiff had not exhausted "the military process").[9]

Moreover, the Tenth Circuit has required service members to appeal adverse personnel decisions to the Army Board of Correction for Military Records before seeking judicial intervention "unless to do so would be futile."  *Thornton*, 618 F.2d at 692 (internal quotations and citations omitted) (requiring plaintiff to first appeal to Army Board of Correction for Military Records for review of adverse evaluation in the absence of any explanation as to why such an appeal would be futile).  Nor are evaluations different: the Tenth Circuit has recognized that "[t]he need for military expertise is compelling when review of an [evaluation] is sought.

---

[9] Numerous other circuits also require exhaustion of constitutional claims involving the military. *See, e.g.*, *Lopez v. Donley*, 995 F.2d 223 (5th Cir. 1993) (district court did not have jurisdiction to entertain constitutional claims against military because plaintiff had not exhausted administrative remedies); *Williams v. Sec'y of Navy*, 787 F.2d 552, 558-62 (Fed. Cir. 1986) (exhaustion of intra-military remedies is required regardless of whether plaintiff "alleges violation of the Constitution, statutes, or military regulations," further noting that courts must hesitate to entertain a suit involving military personnel issues for "at least as long as [the period] required for the exhaustion of remedies provided within the military services."); *Trerice v. Pedersen*, 769 F.2d 1398, 1401 (9th Cir. 1985) (constitutional claims against military lacked "any allegation of exhaustion of intraservice remedies, and so were properly dismissed.").

'An Officer Efficiency rating as to the quality of an officer's service is a highly subjective process which requires the opinions and judgments of military professionals.'" *Thornton*, 618 F.2d at 692 (quoting *Turner v. Dep't of Army*, 447 F. Supp. 1207, 1213 (D.D.C. 1978)); *see also Mindes v. Seaman*, 501 F.2d 175, 176 (5th Cir. 1974) ("[R]atings and promotion decisions are peculiarly within the discretion of military authority.").

Recognizing these principles, numerous courts have concluded that judicial review of such actions must wait pending intra-military review. *See, e.g.*, *Lawrence v. McCarthy*, 344 F.3d 467 (5th Cir. 2003) (district court erred in granting temporary restraining order where all issues were simultaneously pending before a military tribunal); *Stein v. Dowling*, No. 12-cv-0816-H, 2012 WL 12864925, at *6-7 (S.D. Cal. 2012) (denying motion for preliminary injunction in case involving First Amendment rights because judicial intervention "would be premature and interfere with military functions" in light of ongoing intra-military administrative process and, even if separated, plaintiff would have intra-military appeal options); *cf. Standage v. Braithwaite*, No. ELH-20-2830, 2021 WL 1060342 (D. Md. March 18, 2021) (finding no jurisdiction to review claims by naval midshipman challenging disciplinary action due to social media posts in part because plaintiff's claims were the subject of ongoing intra-military review); *Bowman v. Brownlee*, 333 F.Supp.2d 554, 559 (W.D. Va. 2004) (holding that court lacked jurisdiction pending appeal of letter of reprimand to Army Board of Correction for Military Records).

This case illustrates the value of allowing for the completion of intra-military appeals. Here, the Department of Defense applied its expertise to determine that the Instruction does not apply to National Guard members like Plaintiff. Based on that determination, the Adjutant General found that the Letter of Reprimand was improper. These determinations resolved

16

substantial portions of Plaintiff's claims without unnecessary expenditure of judicial resources or interference into military issues.  Permitting completion of the intra-military remedies for the GOMOR and evaluation will similarly allow the military to determine in the first instance whether those actions were proper.  Because Plaintiff is currently appealing both actions within the military, the Court should dismiss the claims for lack of subject matter jurisdiction.

### B.  Even if the Court reaches the test's second part, the factors weigh heavily against review.

The Court need not, and should not, reach the test's second part because Plaintiff has not exhausted his intra-military appeals.  In any event, the test's second part also weighs heavily against judicial review.

As noted earlier, if a plaintiff meets the test's first part—which Plaintiff cannot do here—a court must then weigh the following factors to determine whether to review the claims: (1) the nature and strength of the challenge to the military determination, (2) the potential injury to the plaintiff if review is refused, (3) the type and degree of anticipated interference with the military function, and (4) the extent to which military discretion or expertise is involved in the challenged decision.  *Lindenau*, 663 F.2d at 71.  "[T]he second part of [this] test ... essentially balances the interests of the parties, with a preference against interference in the military."  *Costner v. Okla. Army Nat'l Guard*, 833 F.2d 905, 907 (10th Cir. 1987).

*First*, with respect to the nature and strength of the challenge, Plaintiff's challenge to the GOMOR is far from strong.  As explained in Section IV, *infra*, the GOMOR was based not on Plaintiff's participation in a protest, but rather on Plaintiff's second op-ed, which publicly criticized his chain of command.  *See* ECF No. 13-6 at 1-2.  Plaintiff's public complaints about his superior officers are not entitled to First Amendment protection.  *See, e.g.*, *Parker v. Levy*,

417 U.S. 733, 761 (1974) (speech that "undermine[s] the effectiveness of response to command" is "constitutionally unprotected"); *Wilson v. James*, 139 F. Supp. 3d 410, 426 (D.D.C. 2015) (citing *Millican v. U.S.*, 744 F. Supp. 2d 296, 307 (D.D.C. 2010)) (same).

Plaintiff's challenge to the evaluation is similarly weak.  Plaintiff does not appear to allege that any negative ratings were based on his protest participation.  Although he alleges that Defendant Beatty "threatened . . . to file a negative evaluation of Plaintiff based solely on Black Lives Matter protest participation," he then explains that Defendants originally cited "Plaintiff's whistleblower complaints as the basis for the negative ratings."  *See* ECF No. 13 at ¶ 32.  He appears to take the view that those whistleblower complaints were the real reason for his rating, not his protest participation, which he alleges was "*pretextually cited*."  *Id.* (emphasis added). But Plaintiff then alleges no specific facts about the "whistleblower complaints" that he alleges were the true reason for his negative ratings.  Moreover, the evaluation itself references neither Plaintiff's protest participation nor his whistleblower complaints.  *See* Ex. 7, Copy of Evaluation. Therefore, Plaintiff's allegations are insufficient to plead a constitutional violation.

*Second*, with respect to the potential injury if review is refused, Plaintiff has not specified any ongoing injury.  Since the Instruction does not apply to Plaintiff, his First Amendment rights are not being chilled.  And although he generally alleges that "Defendants' constitutional violations cause ongoing harm to Plaintiff," *see, e.g.*, ECF No. 13 at ¶ 61, he provides no specific information about any such harm attributable to either the GOMOR or the evaluation.[10] Therefore, this factor weighs against review.  Indeed, courts have found far more significant

---

[10] To the extent Plaintiff speculates these actions may affect his ability to be promoted, the Tenth Circuit has recognized such injury to be "merely economic" and not given much weight. *DeRito*, 851 F. App'x at 862 (citing *Costner*, 833 F.2d at 908).

harms to be insufficient to weigh in favor of judicial review. *Cf. Lindenau*, 663 F.2d at 74 (finding that lost opportunity to enlist in the National Guard did not weigh in favor of review because plaintiff had no established right to enlist); *NeSmith*, 615 F.2d at 202 (recognizing that even discharge from the military is insufficient to warrant judicial review).

*Finally*, the last two factors—the type of interference and the military experience and discretion involved—"'present a single inquiry, focusing on disruption of military functions and distortion of factors such as troop morale which are important to the operation of the military.'" *Lindenau*, 663 F.2d at 74.  Those factors weigh heavily against review here.  "Courts should defer to the superior knowledge and experience of professionals in matters such as promotions or orders directly related to specific military functions."  *Mindes*, 453 F.2d at 201-02.  Whether a reprimand for conduct towards superior officers is warranted, and whether particular ratings are justified for an individual service member, requires the application of military experience and discretion.  *See Thornton*, 618 F.2d at 691 ("[t]he need for military expertise is compelling when review of an [officer evaluation] is sought."); *Orloff v. Willoughby*, 345 U.S. 83, 91 (1953) (whether a service member deserves appointment to a higher rank "is not for judges to say").  Courts have recognized that there is a "great degree of military discretion" involved in matters such as whether promotions are warranted, discharge from service is warranted, and other similar discretionary decisions.  *See, e.g.*, *NeSmith*, 615 F.2d at 203 (finding that discretion involved in determining whether discharge was warranted weighed against judicial review); *Mindes*, 453 F.2d at 199 ("[t]raditional judicial trepidation over interfering with the military establishment has been strongly manifested in an unwillingness to second guess judgments requiring military expertise and in a reluctance to substitute court orders for discretionary military decisions.").

Finally, judicial review of performance evaluations and reprimands for conduct deemed improper would result in significant interference with the military's ability to perform its mission.  *See Goldman v. Weinberger*, 475 U.S. 503, 507 (1986) (citations omitted) (noting that "to accomplish its mission the military must foster instinctive obedience, unity, commitment, and esprit de corps"); *Chappell v. Wallace*, 462 U.S. 296, 305 (1983) ("courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have.").  Such review could inundate the courts with service member's complaints and "stultify the military in the performance of its vital mission."  *Mindes*, 453 F.2d at 199.

Accordingly, all these factors weigh heavily against review of the GOMOR and the evaluation.  Thus, even if Plaintiff had exhausted his intra-military remedies, his claims regarding the GOMOR and evaluation should be dismissed.

IV.    **Even if the Court could review the challenged personnel actions, there are additional grounds for dismissal.**

A.  **Plaintiff fails to state a claim concerning the GOMOR.**

Plaintiff's claims concerning the GOMOR should be dismissed for the additional reason that he has failed to state a claim.  The GOMOR, which is attached to the FAC,[11] rested on the military's assessment that an op-ed that Plaintiff wrote was disrespectful to his chain of command.  The GOMOR, *see* ECF No. 13-6, found that the op-ed was intended to intimidate Plaintiff's chain of command and contained numerous false statements, including that Plaintiff had been issued a gag order, that his promotion had been blocked, and that the COARNG was

---

[11] On a motion to dismiss, a court may review exhibits attached to the complaint, *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006), and will not accept as true allegations that are "directly contradicted by the attached exhibits." *Estate of Ronquillo*, 720 F. App'x at 437.

perpetuating a culture of blacklisting.  ECF No. 13-6 at 1; *see also* ECF No. 13-2 (copy of op-ed).  Contrary to Plaintiff's characterization otherwise,[12] the GOMOR determined that these statements were disrespectful to Plaintiff's chain of command and depicted the COARNG in a damaging manner.  *Id.*

The Supreme Court has repeatedly held that while members of the military have First Amendment rights, the military's special character and mission means that the constitutional rights of those in the military must often yield to the "overriding demands of discipline and duty."  *See Brown v. Glines*, 444 U.S. 348, 354 (1980) (cleaned up); *see also Parker*, 417 U.S. at 744 ("'No question can be left open as to the right to command in the officer, or the duty of obedience in the soldier.'"); *Chappell*, 462 U.S. at 300 ("the habit of immediate compliance with military procedures and orders must be virtually reflex with no time for debate or reflection.").  In recognition of this authority, the Court has long extended substantial deference to the armed forces in areas of military expertise, including where service members' constitutional rights are implicated.  *See, e.g.*, *Solorio v. United States*, 483 U.S. 435, 448 (1987) ("we have adhered to this principle of deference in a variety of contexts where, as here, the constitutional rights of servicemen were implicated"); *Goldman*, 475 U.S. at 507 ("Our review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society.").

Because of this overriding dependence on command structure and discipline, the Supreme Court has held that speech that "undermine[s] the effectiveness of response to

---

[12]  Plaintiff alleges that the GOMOR "only" cited the Instruction and was issued based on his protest participation.  FAC at ¶ 30.  However, his characterization of the GOMOR is belied by the document itself.

command" is "constitutionally unprotected" in the military context.  *Parker*, 417 U.S. at 758-59.

As one court summarized, "speech by a member of the military that undermines the chain of

command, and the obedience, order, and discipline it is designed to ensure, does not receive First

Amendment protection."  *Wilson*, 139 F.Supp.3d at 426.  For example, in *Parker v. Levy*, an

Army captain made public statements to enlisted personnel expressing his view that the United

States was wrong to be involved in the Vietnam War, and encouraging enlisted personnel to

refuse to go to Vietnam.  417 U.S. at 736-37.  The Court held that the plaintiff's "conduct, that of

a commissioned officer publicly urging enlisted personnel to refuse to obey orders . . . was

unprotected under the most expansive notions of the First Amendment."  *Id.* at 761; *see also*

*Wilson*, 139 F. Supp. 3d at 427 (holding that a military member's rant against his commanding

officer on Facebook was not entitled to First Amendment protection).

The First Amendment thus does not grant service members a First Amendment right to

publish public complaints about their chain of command.  *See, e.g.*, *Wilson*, 139 F. Supp. 3d at

427 ("It goes without saying that speech by a subordinate that publicly denigrates and humiliates

a commanding officer is not entitled to the First Amendment's protections.").  Instead, there is a

"comprehensive internal system of justice to regulate military life," which "provides for review

and remedy of complaints and grievances."  *Chappell*, 462 U.S. at 302; *see also e.g.*, 10 U.S.C.

§ 1552 (providing for review of personnel actions through civilian boards); 10 U.S.C. § 1034

(providing service members can raise grievances with the relevant Inspector General or Members

of Congress); 10 U.S.C. § 938 (complaint of wrongs); Colo. Rev. Stat. § 28-3.1-604 (same).

Under these standards, Plaintiff has not alleged facts showing that he has a First

Amendment right to publish an op-ed to publicly air his grievances about his chain of command,

especially where Plaintiff has the right to use intra-military appeals processes—as he is currently doing—to obtain review of the GOMOR.  Plaintiff has therefore failed to state a claim for violation of his First Amendment rights with respect to the GOMOR.

**B.  Plaintiff's APA claim should be dismissed under Rule 12(b)(6).**

Plaintiff's third claim, which seeks review under the APA of the personnel actions, FAC at ¶¶ 58-61, fails to state a claim.  APA review is unavailable for actions taken by the COARNG, and such review would be premature.

*1.  The APA does not apply to Plaintiff's reprimands or evaluation.*

The APA provides a right of review for actions taken by the federal government. Specifically, it provides a right of review for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action," 5 U.S.C. § 702, and the term "agency" is limited to "each authority of the Government of the United States."  5 U.S.C. § 701(b)(1).  The APA excludes "the governments of the territories or possessions of the United States" from the definition of "agency."  *Id.* at § 701(b)(1)(C).  Accordingly, the APA does not apply to requests for judicial review of state agency actions.  *See Donahue v. Kansas Bd. of Educ.*, 827 F. App'x 846, 850-51 (10th Cir. 2020).

Here, Plaintiff challenges actions of a state National Guard unit, which is not a federal agency.  *See Gilliam v. Miller*, 973 F.2d 760, 763-64 (9th Cir. 1992) (dismissal from state National Guard was not "agency action" even if based upon federal regulation).  Plaintiff's state National Guard Unit is part of the Colorado Department of Military and Veterans Affairs, led by a state official, The Adjutant General.  *See* Colo. Rev. Stat. § 28-3-106; *see also id.* §§ 28-3-302 (stating Colorado National Guard officers of the state staff and detachment "shall be selected and

appointed by the adjutant general and commissioned by the governor"), 28-3.1-114(2)(a)(V) (authorizing commanding officers in the Colorado National Guard to issue reprimands under state law).  Therefore, Plaintiff's APA claim should be dismissed.

### 2.   If review were available, it would be premature.

The APA provides for review of agency action when that action is "final," 5 U.S.C. § 704, but Plaintiff's challenges to the GOMOR and evaluation are not final.  When a party elects to pursue an administrative appeal to challenge an agency decision, as Plaintiff has done here, the agency decision becomes non-final for purposes of APA review.  The APA tolls the judicial review until the administrative appeal is complete, and "a party who has sought rehearing cannot seek judicial review until the rehearing has concluded."  *Stone v. I.N.S.*, 514 U.S. 386, 392 (1995) (citations omitted); *see also Farrell-Cooper Mining Company v. U.S. Dep't of Interior*, 864 F.3d 1105, 1115 (10th Cir. 2017) (distinguishing between non-mandatory administrative appeals and mandatory appeals for purposes of APA finality).  The rationale is that "when the party elects to seek a rehearing there is always a possibility that the order complained of will be modified in a way which renders judicial review unnecessary."  *Stone*, 514 U.S. at 392 (cleaned up); *see also Clifton Power Corp. v. F.E.R.C.*, 294 F.3d 108, 111-12 (D.C. Cir. 2002) ("There is good reason to prohibit any litigant from pressing its case concurrently upon both the judicial and the administrative fronts: a favorable decision from the agency might yet obviate the need for review by the court.").

Accordingly, where an initial agency decision may be modified or reversed through an optional administrative review process, courts have found that the decision at issue is nonfinal. *See, e.g.*, *Acura of Bellevue v. Reich*, 90 F.3d 1403, 1408 (9th Cir. 1996) (finding no qualitative

difference between a motion for reconsideration and appeal to a superior agency authority for purposes of finality); *see also I.C.C. v. Bhd. of Locomotive Engineers*, 482 U.S. 270, 284-85 (1987) (recognizing that under 5 U.S.C. § 704, requests that an agency reconsider its orders "render[s] the orders under reconsideration nonfinal"); *In Re FCC 11-161*, 753 F.3d 1015, 1134 n.6 (10th Cir. 2014) (lawsuit was premature when party had filed petition for reconsideration). Here, the pending appeals could result in removal, alteration, or correction of the evaluation and GOMOR, rendering judicial review unnecessary. *See* Section III.a, *supra*. Accordingly, the actions are nonfinal and review under the APA would be premature.

### C. Plaintiff's claim for declaratory relief fails to state a claim.

Plaintiff's fourth claim cites the Declaratory Judgment Act, 28 U.S.C. § 2201, but cites no independent cause of action. FAC at ¶¶ 63-67. "However, the Declaratory Judgment Act does not confer jurisdiction upon federal courts, so the power to issue declaratory judgments must lie in some independent basis of jurisdiction." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (cleaned up). Plaintiff's citation of that Act thus does not present a valid independent claim for relief. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 199 (2014) (Declaratory Judgment Act is procedural, leaving "substantive rights unchanged") (internal quotations omitted).

### CONCLUSION

For the reasons set forth above, the FAC should be dismissed.

Respectfully submitted this 2nd day of August, 2021.

MATTHEW T. KIRSCH
Acting United States Attorney

s/ Jennifer R. Lake
*Jennifer R. Lake*
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
jennifer.lake@usdoj.gov

Counsel for Defendants Hokanson, Whitley, and Austin

PHILIP J. WEISER
Attorney General

s/ Grant T. Sullivan
*Grant T. Sullivan*
Assistant Solicitor General
Colorado Attorney General's Office
1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: 720-508-6349
grant.sullivan@coag.gov

Counsel for Defendants Paul, Sandrock, Beatty, Robinson, and Clellan

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

alan.kennedy@aya.yale.edu
girightslawyer@gmail.com
jason@jasonstecklaw.com

s/ Xan Serocki
Xan Serocki
Colorado Department of Law