**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 21-cv-0772-WJM-MEH

ALAN KENNEDY,

    Plaintiff,

v.

DOUGLAS PAUL, Assistant Adjutant General, Colorado National Guard;
RICHARD SANDROCK, JFHQ Commander, Colorado National Guard;
CHARLES BEATTY, Chief of Staff (Army), Colorado National Guard;
KEITH ROBINSON, Staff Judge Advocate, Colorado National Guard;
LAURA CLELLAN, Adjutant General, Colorado National Guard;
DANIEL HOKANSON, Chief of the National Guard Bureau;
CHRISTINE WORMUTH, Secretary of the Army; and
LLOYD AUSTIN, Secretary of Defense,

    Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART
SECOND MOTION TO DISMISS**

Plaintiff Alan Kennedy sues Brigadier General Douglas Paul, Major Richard Sandrock, Colonel Charles Beatty, Colonel Keith Robinson, Brigadier General Laura Clellan (collectively, "National Guard Defendants"), General Daniel Hokanson, Secretary of the Army Christine Wormuth, and Secretary of Defense Lloyd Austin (collectively, "Federal Defendants") (collectively, "Defendants") for alleged violations of his First Amendment rights and the Administrative Procedure Act ("APA"). (ECF No. 57.) Plaintiff seeks injunctive and declaratory relief. (*Id.* ¶¶ 109–118.)

Before the Court is Defendants' second Motion to Dismiss ("Motion"). (ECF No. 93.) The Motion is fully briefed. (ECF Nos. 94, 95, 100, 101.) For the following

reasons, the Court grants in part and denies in part the Motion.

## I. BACKGROUND[1]

The parties are familiar with the background of this case from, among other sources, the Court's Order granting Defendants' first Motion to Dismiss ("Prior Order") and its subsequent vacatur of that Order. (ECF Nos. 78, 86.) The Court incorporates that background here and adds the following pertinent facts.

Plaintiff is a former Captain in the Colorado Army National Guard ("COARNG"). (ECF No. 78 at 2.) While serving in the COARNG, Plaintiff peacefully participated in a Black Lives Matter protest in Denver while off-duty and in civilian clothing. (*Id.*) After the protest, Plaintiff wrote an op-ed article about his protest participation and the conduct of the Denver Police during the protest, which was published in the *Denver Post*. (*Id.*) Plaintiff's chain of command in the COARNG opened an investigation into Plaintiff's protest participation and authorship of the *Denver Post* op-ed. (*Id.* at 2–3.) In response, Plaintiff wrote a second op-ed, published in the *Colorado Newsline*, which questioned why he was being investigated for his peaceful protest activity. (*Id.* at 3.) These events caused a series of "Personnel Actions" that the Court previously described as "a cascade of reprimands, negative evaluations, and other detrimental actions affecting Plaintiff's military career, including a withheld medal and delayed promotion." (*Id.*) Specifically,

> On July 12, 2020, Plaintiff received a Letter of Reprimand

---

[1] The following factual summary is drawn from Plaintiff's Second Amended Complaint (ECF No. 57), except where otherwise stated. The Court assumes the allegations in the Second Amended Complaint are true for the purposes of deciding the Motion. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

2

> from Sandrock based in part of Department of Defense
> Instruction 1325.06, Enclosure 3, Paragraph 6(d)
> ("Instruction"), which prohibits officers from participating in
> protests where "violence is likely to result." (*Id.* ¶¶ 27–28,
> 83.) On September 13, 2020, Plaintiff received a General
> Officer Memorandum of Reprimand ("GOMOR") from Paul,
> also based in part on the DoDI. (*Id.* ¶¶ 29–32.) On March 4,
> 2021, Beatty and Robinson filed a negative evaluation of
> Plaintiff, based on the DoDI. (*Id.* ¶¶ 33.) On July 7, 2021,
> and July 8, 2021, Sandrock informed Plaintiff that he would
> receive the Army Reserve Achievement Medal ("Medal")
> given every three years to National Guard and Reserve unit
> members for "exemplary behavior, efficiency, and fidelity."
> (*Id.* ¶ 51.) Plaintiff later learned that Paul overruled
> Sandrock's decision because of the Letter of Reprimand and
> GOMOR, and Plaintiff did not receive the Medal. (*Id.* ¶ 52.)
> On July 26, 2021, non-party Colonel Kevin Mulcahy, Deputy
> Director of Manpower and Personnel for the National Guard
> Bureau, issued a memorandum that the DoDI does not apply
> to "National Guard personnel in a non-federalized duty
> status." (*Id.* ¶ 39.) On September 11, 2021, Plaintiff
> submitted a request to transfer to the U.S. Army Reserve in
> Virginia. (*Id.* ¶ 54.) On October 20, 2021, Beatty informed
> Plaintiff that he would receive a second negative evaluation
> based on the GOMOR. (*Id.* ¶ 55.)

(ECF No. 78 at 2–3.)

Plaintiff filed this action because these Personnel Actions, which were based on the Instruction, allegedly violated his First Amendment rights and the APA. (ECF No. 57.) He also filed various intra-military appeals challenging the Personnel Actions, which he has prevailed on during the pendency of this action. (ECF No. 70-3 ¶ 4.) The Letter of Reprimand, first and second negative evaluations, and GOMOR were removed from Plaintiff's file; he received the Medal he was previously denied; his transfer to the U.S. Army Reserve in Virginia was approved; and he was promoted to Major. (ECF No. 71-1.) Based on these developments, the Court dismissed Plaintiff's Second Amended Complaint ("SAC") without prejudice on mootness and standing grounds. (ECF No. 78

3

at 5–12.)

About a year later, Plaintiff filed a Motion to Alter Judgment, arguing that subsequent events had undercut the rationales and factual bases of the Prior Order. (ECF No. 80.)  Among other things, he asserted that the U.S. Army Reserve had opened an investigation into the same First Amendment activity underlying the Personnel Actions based on information provided by the COARNG and his promotion to Major had been "involuntarily delayed."  (*Id.*)  He further asserted that COARNG's second negative evaluation was included in a file used to determine whether he would be selected for a competitive "resident" intermediate level education ("ILE") course.  (*Id.* at 7.)  While all Majors must complete ILE, those selected for resident programs receive a free master's degree and are more likely to receive choice assignments and be later promoted to Lieutenant Colonel.  (*Id.* at 7; ECF No. 94 at 6.)  Plaintiff was not selected for a resident ILE program.  (ECF No. 85 at 2.)

In light of these developments, the Court vacated its Prior Order, finding that it was based on a mistaken "impression that the second negative evaluation had been removed from Plaintiff's file and could not have any further impact on Plaintiff's military career."  (ECF No. 86 at 5.)  The Court explained that these developments demonstrated both "that the National Guard Defendants' enforcement of the DoDI remains a potential negative mark on Plaintiff's career . . . [and] that policies implemented by the Federal Defendants in part caused this unfortunate state of affairs."  (*Id.* at 5–6.)  As a result, the Court directed Defendants "to file an Amended Joint Motion to Dismiss the Second Amended Complaint predicated on the current state of the factual record."  (*Id.* at 6.)

4

The Court now considers Defendants' second Motion to Dismiss.

## II. MOTION TO DISMISS PRINCIPLES

Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk*, 493 F.3d at 1177. Thus, in ruling on a Motion to Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, a court may consider only the contents of a complaint when ruling on a motion to dismiss. *Goodwill Indus. of Cent. Okla., Inc. v. Philadelphia Indem. Ins. Co.*, 21 F.4th 704, 709 (10th Cir. 2021) (citing *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013)). But a court may also consider documents that a plaintiff (1) attaches to their complaint; (2) incorporates by reference in their complaint; or (3) refers to in their complaint and that are central to her complaint and indisputably authentic. *See Berneike*, 708 F.3d at 1146 (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)).

5

When a district court considers documents outside the pleadings without a valid exception, it must convert the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d); *Carter v. Stanton*, 405 U.S. 669, 671 (1972). The court must inform the parties of its conversion and give them a reasonable opportunity to accumulate and present all relevant evidence. Fed. R. Civ. P. 12(d); *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) (citing *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454, 457 (10th Cir. 1978)). Failure to do so generally constitutes reversible error. *Cuervo v. Sorenson*, 112 F.4th 1307, 1310 (10th Cir. 2024) ("A district court generally may not rely on facts emanating from outside of a plaintiff's well-pleaded complaint when it grants a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."); *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) (citing *Miller*, 948 F.2d at 1565–66).

A court may, however, consider documents outside the complaint to determine whether it has subject matter jurisdiction. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) ("In the course of a factual attack under Rule 12(b)(1), a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion."). Whether a plaintiff has standing or a claim is moot relates to whether the Court has subject matter jurisdiction over the action. *Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1222 (10th Cir. 2012) (concluding that "standing can be colorably characterized as an issue of subject matter jurisdiction"); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1122 (10th Cir. 2010) (same as to mootness).

### III. ANALYSIS

To reiterate, Plaintiff seeks: (1) prospective relief from the Personnel Actions, which have allegedly negatively impacted his military career; and (2) a decision from this Court that the Instruction, facially and as applied, violates the First Amendment rights of Plaintiff and those similarly situated. (ECF No. 78 at 5.) The Court addresses each request for relief in turn.

### A.     Personnel Actions

As mentioned, the Court initially dismissed Plaintiff's claims pertaining to the Personnel Actions on mootness grounds, explaining: "Now that Plaintiff has also prevailed on his intra-military appeal concerning the second negative evaluation, no order from this Court could have a real-world effect on Plaintiff's rights with respect to the Personnel Actions." (*Id.* at 6.)

In light of events that have occurred since Plaintiff transferred to the U.S. Army Reserve in Virginia, however, Plaintiff maintains that "this action is not moot because the negative effects of the Personnel Actions continue to hound Plaintiff, despite Plaintiff's transfer to the U.S. Army Reserve." (ECF No. 94 at 11.) In support, he points to the following events that allegedly occurred after he filed the SAC:

1. He "was issued a second negative evaluation based on the challenged DoDI";

2. He was not selected for the resident ILE program;

3. He "was counseled by Federal Defendants based on information provided by the Colorado Army National Guard";

4. He was investigated for a fourth time by the Federal Defendants based on information provided by COARNG;

5. He "was subjected to 'flags'" in his "IPPS-A [Integrated Personnel and Pay

7

>    System – Army] file";
>
> 6.   He "was denied job placements and his actual promotion was delayed";
>
> 7.   He "was threatened by Defendant Austin and the U.S. Department of Defense with future enforcement of the challenged DoDI because Federal Defendants assert that the challenged DoDI continues to apply to 'all uniformed personnel"; and
>
> 8.   He "was threatened by his chain of command in the U.S. Army Reserve with future enforcement of the challenged DoDI."

(*Id.* at 11–12.)

All these events undisputedly occurred after Plaintiff filed the SAC. (*Id.* at 11.) Hence, the events were not (and could not have been) alleged in, incorporated by reference, or otherwise were referred to and central to the complaint. As a result, at this juncture, the Court is constrained to consider them solely for the narrow purpose of determining whether Plaintiff has standing or his claims are moot—that is, to determine whether the Court continues to have subject matter jurisdiction over this action. *Stuart*, 271 F.3d at 1225.

Like it did previously, the Court again concludes that all of Plaintiff's claims against the National Guard Defendants are moot. All the Personnel Actions taken by the National Guard Defendants—including the second evaluation—have been internally overturned. And Plaintiff successfully transferred from COARNG to the U.S. Army Reserve in Virginia. Thus, the National Guard Defendants no longer have the authority to further discipline Plaintiff.

The events that allegedly occurred after Plaintiff transferred to the U.S. Army Reserve do not change the analysis with respect to the National Guard Defendants. Although Plaintiff attempts to link the National Guard Defendants to the new events by asserting that the National Guard Defendants provided "the information" to the U.S.

8

Army Reserve, that is not sufficient to sustain his claims. Even were the Court to hold that he was wrongfully investigated, counseled, and not selected for the ILE resident program, this would have no bearing on the National Guard Defendants. Simply put, the National Guard Defendants have done all they can to remedy the Personnel Actions they took against Plaintiff.

Accordingly, the Court dismisses as moot Plaintiff's claims against the National Guard Defendants based on the original Personnel Actions and the events that followed. *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (even where a plaintiff has standing at the beginning of a case, the case may nonetheless "become[] moot when [the] plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision").

The Personnel Actions allegedly undertaken after Plaintiff joined the U.S. Army Reserve, however, are sufficiently tethered to actions taken by the Federal Defendants to confer standing and defeat Defendants' mootness argument. To determine whether a plaintiff has standing, the Supreme Court has articulated a three-element test:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and internal quotation marks omitted).

According to Plaintiff, he has standing because he was not selected for the ILE resident program based on the second evaluation that was included in the file reviewed

9

by the ILE Board.  (ECF No. 94 at 12.)  Plaintiff avers that the Instruction, on which the second evaluation was based, is why[2] he was denied admittance to the resident program.  (*Id.* at 12.)

The Court agrees that Plaintiff has standing against the Federal Defendants based on the actions allegedly undertaken by the U.S. Army Reserve, which were allegedly based on the Instruction issued by the Federal Defendants.  That is, as alleged, (1) Plaintiff was injured by the ILE Board's decision not to admit him to the resident program; (2) the decision can be traced back to the inclusion of the second evaluation in the file considered by the ILE Board; and (3) the second evaluation was issued as a result of the Federal Defendants' unconstitutional Instruction and can be redressed by a declaratory judgment or injunction as to the decision.  (*Id.*)

Contrary to Defendants' assertion, it matters not that the second evaluation "has been removed from [Plaintiff's] Army Military Human Recourse Record" and will not be considered by "future promotion boards."  (ECF No. 93 at 12.)  The concrete injury alleged by Plaintiff is based on, among other things,[3] the ILE Board not selecting him for

---

[2] Of course, the Court's standing finding has little to do with the persuasiveness of Plaintiff's claim that he was denied admittance because of the second evaluation.  The Court is cognizant of Defendants' argument that Plaintiff was denied admittance to the "highly competitive" resident program because he lacked certain attributes most successful candidates demonstrate.  (ECF No. 93 at 9.)  But Defendants' rebuttal is more appropriately considered at the summary judgment stage, not the motion to dismiss stage.

[3] The Court notes that Plaintiff alleges concrete injuries based on new investigations undertaken since he transferred to the U.S. Army Reserves, flags in his "IPPS-A file," a delayed promotion, and negative counseling.  (ECF No. 94 at 11.)  But the Court does not base its subject matter jurisdiction finding on these allegations because it is not clear that these actions constitute injuries.  For example, it is unclear to the Court how an investigation—without resulting disciplinary action—has injured Plaintiff.

It is likewise unclear to the Court whether some of these alleged injuries actually exist.  Defendants contend that, contrary to Plaintiff's assertion, he was timely promoted to Major, he was not investigated after he transferred to the U.S. Army Reserves, the negative counseling he

10

the resident program. In the Court's view, this is sufficient to establish standing with respect to the Federal Defendants since they are alleged to have issued the Instruction. Put differently, the Federal Defendants have the authority to withdraw or amend the Instruction, *i.e.*, redress Plaintiff's injuries. Accordingly, the Court also finds that Plaintiff's claims—premised on the Instruction issued by the Federal Defendants and related actions taken by the U.S. Army Reserve[4]—are not moot and may proceed against the Federal Defendants.

## B. Constitutional Claims

For the same reasons the Court dismisses the claims arising out of the Personnel Actions against the National Guard Defendants, the Court dismisses the constitutional claims as well. Even were the Court to declare the Instruction to be unconstitutional (under either Plaintiff's facial or as applied theory), this would have no real-world impact on the National Guard Defendants because they no longer have the authority to enforce the Instruction against Plaintiff. Consequently, none of Plaintiff's claims remain pending against the National Guard Defendants and the Court dismisses them entirely from the action. *Kansas Judicial Review v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009).

The same cannot be said, however, with respect to the Federal Defendants. As alleged, there is a throughline between the alleged Personnel Actions undertaken by the U.S. Army Reserve and the Federal Defendants: the issuance of the Instruction. In its

---

received did not concern his protest participation, and he "is not currently flagged and that there is nothing reflected in IPPSA-A that would prevent favorable personnel actions." (ECF No. 93 at 12, 14; ECF No. 95 at 5.)

[4] To be clear, the Court dismisses Plaintiff's claims to the extent they are based on Personnel Actions that have already been remedied or overturned.

11

Prior Order, the Court found that Plaintiff's claimed injury was not "fairly traceable" to the Federal Defendants because "this case is about the unfair punishment meted out by the National Guard Defendants because Plaintiff's commanding officers disagreed with the content of his constitutionally protected speech." (ECF No. 78 at 9–10.)

But now, Plaintiff alleges that he has been unfairly punished by the U.S. Army Reserve as a result of, among other things, the Instruction issued (and reaffirmed) by the Federal Defendants. (ECF No. 94 at 7.) Unlike before, where COARGN remedied its Personnel Actions by overturning them, the injury caused by the U.S. Army Reserve has not yet[5] been remedied. And as the Court explained in its vacatur order, this injury and "unfortunate state of affairs" can reasonably be tied to "policies implemented by the Federal Defendants." (ECF No. 86 at 5–6.) Thus, the Court rejects Defendants' argument that the Court lacks subject matter jurisdiction with respect to its constitutional claims against the Federal Defendants.

## IV. DEFENDANTS' REMAINING ARGUMENTS

The Court notes that Defendants advance other arguments[6] not related to

---

[5] Whether Plaintiff has availed himself of his intra-military remedies pertaining to the ILE Board decision is disputed by the parties. The Court's current view of the matter is that Plaintiff likely has the option to appeal this decision before the Army Board for Correction of Military Records. According to a declaration provided by Defendants, "the results of the ILE board *constitute an Army record*" and it is "well within the broad authority of the ABCMR to consider whether there was an error or injustice with the selection process of that board." (ECF No. 93-16 at 3 (emphasis added).)

Although "the requirement of exhaustion is not a rigid one," *Thornton v. Coffey*, 618 F.2d 686, 692 (10th Cir. 1980), whether Plaintiff exhausted this administrative remedy could likely become relevant to whether his claims are justiciable at the summary judgment stage. *See Lindenau v. Alexander*, 663 F.2d 68, 71 (10th Cir. 1981) (considering whether intra-military remedies and appeals have been exhausted in determining whether the claim is justiciable).

[6] One such argument is that "Plaintiff's claims are not justiciable." (ECF No. 93 at 19.) But "justiciability of a claim is not a question of subject matter jurisdiction, but rather of the court's competence to address a particular claim." *Reilly v. Sec'y of Navy*, 12 F. Supp. 3d 125,

subject matter jurisdiction for why Plaintiff's claims should be dismissed. But, for the reasons already explained, the Court cannot at this juncture address such arguments insofar as they are based on facts alleged outside the SAC. Instead, to properly consider such facts and related arguments, the Court must and can do so only in the context of a future motion for summary judgment filed by the Federal Defendants pursuant to Rule 56.

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. Defendants' Second Motion to Dismiss (ECF No. 93) is GRANTED IN PART AND DENIED IN PART;

2. The National Guard Defendants are DISMISSED WITH PREJUDICE from the action. The parties and the Clerk of Court are DIRECTED to REMOVE the National Guard Defendants from the caption of all future filings in this action;

3. That portion of the instant Motion to Dismiss directed to Plaintiff's claims against the Federal Defendants will be HELD IN ABEYANCE, and will be ruled on in conjunction with the Court's consideration of a to-be-filed Rule 56 motion for summary judgment; and

---

139 (D.D.C. 2014) (citing *Oryszak v. Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009) (Ginsburg, J., concurring) ("That a plaintiff makes a claim that is not justiciable because [it is] committed to executive discretion does not mean the court lacks subject matter jurisdiction over his case[.]")).

The Court therefore cannot consider Defendants' justiciability argument to the extent it relies on allegations outside the SAC. *See Nauman v. Wormuth*, 2024 WL 776100, at *4 (D. Kan. Feb. 26, 2024) (concluding that a court may consider a justiciability claim based only on the four corners of the complaint). And here, Defendants' justifiability argument is based almost entirely on such allegations. (*Id.* at 21.) Thus, Defendants may reraise this argument in a summary judgment motion.

13

4. By no later than **November 15, 2024**, Plaintiff and the Federal Defendants shall jointly contact the chambers of United States Magistrate Judge Michael E. Hegarty to set this matter for a prompt status conference, or such other proceeding Judge Hegarty considers appropriate to move this action forward.

Dated this 13th day of November, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge