IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-0772-WJM-CYC

ALAN KENNEDY,

    Plaintiff,

v.

STEVEN S. NORDHAUS, Chief of the National Guard Bureau;
DANIEL DRISCOLL, Secretary of the Army; and
PETE HEGSETH, Secretary of Defense,

    Defendants.

## ORDER OVERRULING KENNEDY'S OBJECTION TO DISCOVERY RULING

Plaintiff Alan Kennedy objects ("Objection") to United States Magistrate Judge Cyrus Y. Chung's discovery ruling denying his request to search Major General Bobby L. Christine's e-mails.  (ECF No. 130.)  Defendants Steven S. Nordhaus, Daniel Driscoll, and Pete Hegseth (collectively, "Defendants") filed a Response.  (ECF No. 132.)

For the following reasons, the Objection is overruled.

## I. PERTINENT BACKGROUND

The Court assumes the parties' familiarity with the general background of this case from, among other sources, the Court's most recent dismissal Order.  (ECF No. 102.)  The Court incorporates that background here and adds the following pertinent facts.

The Court's dismissal Order left intact Kennedy's facial and as-applied challenges to Department of Defense Instruction 1325.06, Enclosure 3, Paragraph 6(d)

("Instruction") against Defendants.[1]  (ECF No. 102 at 10–12.)  The Court also held in abeyance certain portions of Defendants' motion to dismiss to be ruled on at the summary judgment stage.  (*Id.* at 13.)  The case has since proceeded to discovery.

The Court understands Kennedy's as-applied challenge to be based on the theory that Defendants continue to violate or chill his First Amendment rights by threatening to enforce the Instruction against him.  To further this theory, Kennedy served several written discovery requests on Defendants seeking to require them to conduct an electronic e-mail search of certain custodians serving in the military by using targeted search terms.  (ECF No. 132 at 4.)  Defendants agreed to permit Kennedy to search the e-mails of the following custodians:

> Colonel Christopher Buzzard, Commander of the 1st Brigade, 94th Training Division, who would oversee any disciplinary action taken against Plaintiff in his current position with the U.S. Army Reserve; (2) Brigadier General Louisa Bargeron, Commander of the 94th Training Division, who would also oversee any disciplinary action taken against Plaintiff in his current position with the U.S. Army Reserve; (3) Colonel David G. Barrett, who formerly served as Staff Judge Advocate of the 108th Training Command and in that role spoke with Plaintiff about his career progression and about a review by the Army's Professional Responsibility Branch of a Colorado Army National Guard investigation, which is discussed in more detail below; and (4) Colonel Thomas Schiffer, who formerly served as Chief of the Professional Responsibility Branch in the Office of the Judge Advocate General and exchanged email correspondence with Plaintiff about the Professional Responsibility Branch's review.

(*Id.* at 5.)

Defendants oppose, however, Kennedy's request to search the e-mails of Major

---

[1] But the Court dismissed Kennedy's claims against the Colorado Army National Guard Defendants on mootness grounds.  (ECF No. 102.)

General Christine, the former General Counsel for the National Guard Bureau.  (*Id.*)

Defendants explain that "[t]he National Guard Bureau is an organizational entity of the

Department of Defense that, among other things, serves as the channel of

communication between federal military components and state National Guard units."

(*Id.*)  They reason that Christine's "e-mails have no relevance to Plaintiff's remaining

claims" because "Plaintiff has not been a member of any state National Guard Unit

since he transferred to the U.S. Army Reserve in February 2022, and he does not claim

that the National Guard Bureau has any ongoing authority over him.  He has also never

alleged that the National Guard Bureau disciplined him or threatened to enforce the

Instruction against him."  (*Id.* at 5–6.)  Defendants add that it would be overly

burdensome to order a search of Christine's e-mails because doing so "would require

coordinating with an entirely separate federal entity—the National Guard Bureau—than

the entity that will be conducting the search of the other custodians' emails—the U.S.

Army Reserve."  (*Id.* at 6.)

Judge Chung held a hearing on this discovery dispute, at which Kennedy

explained that he sought to search Christine's e-mails based on a February 2022

memorandum.[2]  (ECF No. 131 at 13.)  The memorandum, authored by an attorney

---

[2] The Court struggles to understand the nexus between the memorandum and Kennedy's theory of future enforcement of the Instruction.  His counsel said at the hearing: "The reason why the two custodians' issue are important has to do with events that have taken place since Major Kennedy transferred to the US Army Reserve, that equally substantiate there being a credible threat of future enforcement.  In particular, that there's some disagreement as to whether it technically constitutes an investigation within—you know, within military terminology or under the rules."  (ECF No. 131 at 4–5.)  Kennedy's counsel then turned to the memorandum, explaining "that the underlying investigation and exhibits related specifically to the 2020 incidences involving enforcement of the DoDI."  (*Id.* at 7.)  But the Court does not see how Kennedy's 2020 protest activity meaningfully relates to the focus of the memorandum.

3

advisor[3] to Christine, addressed whether Kennedy had committed professional misconduct by (1) engaging in "civilian practice while on T10 orders without TJAG permission"; (2) having a "conflict of interest when serving as a plaintiff's counsel when in a T10 status and suing the President"; and (3) using a "lack of precision in statements made to others and posted online." (ECF No. 94-5 at 6.) The memorandum opened by explaining that this alleged ethical misconduct was discovered as a result of an investigation into Kennedy's May 2020 First Amendment activity, which forms the basis of this lawsuit. (*Id.*) Specifically, it states: "In March 2020, the Adjutant General of Colorado (CO) appointed an investigating officer (IO) to investigate allegations of misconduct by CPT Kennedy's chain of command and his supervisor. The investigation was completed in November 2020 and was largely unfounded with respect to CPT Kennedy's chain of command and supervisor." (*Id.*)

Apart from this brief mention of the 2020 investigation in a single paragraph, however, the memorandum focused on the alleged ethical violations listed above. (*See generally id.*) In the end, the attorney advisor concluded that "[c]redible information exists that CPT Kennedy committed a violation of the Rules of Professional Conduct and JAG Corps policy; however, these violations do not raise a substantial question as to his honesty, truthfulness, or fitness as a lawyer in other respects." (*Id.* at 9.) Accordingly, the attorney advisor recommended that Christine "ensure CPT Kennedy is counseled on JALS Pub 1-1 requirements regarding the outside practice of law when in a Title 10 status, 18 U.S.C. 205, and his imprecise statements." (*Id.* at 10.) In a single line at the bottom of the memorandum, Christine "concur[ed]" with" the "findings and

---

[3] The name of the attorney advisor is redacted.

4

recommendations." (*Id.*)

At the hearing, Judge Chung questioned why Kennedy believed that information regarding the "investigation of [his] First Amendment activities" would be in "Christine's emails." (ECF No. 131 at 13.) To Judge Chung's mind, this information (assuming it exists) would likely be in Colonel Schiffer's e-mails, so Judge Chung said that he was "trying to figure out why [Christine is] going to have something in [his] emails that is contrary to what Colonel Schiffer says." (*Id.*) He continued: "I'm just not sure why [Christine's] going to have anything, other than this business about the professional responsibility review that is the basis for this memorandum." (*Id.* at 14.)

Kennedy's counsel responded by stressing that Christine is "the person who is most likely to have separate information, separate emails from the others." (*Id.* at 15.) He added, "I mean, we don't know the nature of the communication that's happening between different levels in terms of rank or different individuals, so I—I suppose it's simply based on—I mean, simply us being in a position of not having had—of not having any discovery, I mean, and not knowing the particular individuals who are making decisions . . . ." (*Id.* at 15–16.)

Defense counsel responded that "the National Guard Bureau is a completely separate organizational entity." (*Id.* at 24.) She continued,

> Now that [Kennedy's] in the U.S. Army Reserve, there is no connection in terms of his supervisory chain of command and the chain of authority between the National Guard Bureau and the U.S. Army Reserve.
>
> And I understand that maybe there's a theory that Major General Christine, for whatever reason, would still have some vested interest in these forwarding emails. But frankly, there's no—there's absolutely no reason to believe that. We haven't seen anything in any documents that have come to

5

>light to date that would suggest that.
>
>And I don't think it's appropriate for plaintiffs to go on a fishing expedition into the emails of a major general who has no ongoing authority over plaintiff to see if, at some point in the past, he was doing something to try to influence his current chain of command.  The other thing I would note, too, is if that was happening, we have agreed to search the emails of his two current supervising officers.  And so, presumably, if Major General Christine was still sending them emails and trying to get them to enforce the instruction against him, those two individuals would be involved because—and those emails would be responsive to the search terms we've agreed to, because those two individuals are the only people who have authority to discipline plaintiff directly.

(*Id.* at 25–26.)  Judge Chung asked, "Those are Colonels Barrett and Schiffer?"  (*Id.* at 26.)  Defense counsel replied that "Colonel Buzzard and Brigadier General Bargeron" actually had "supervisory authority over" Kennedy.  (*Id.*)

After further discussion with the parties, Judge Chung ultimately understood that Colonel Barrett was the custodian tasked with counseling Kennedy regarding the professional responsibility incidents outlined in the memorandum.  (*Id.* at 37.)  Based on that, Judge Chung reasoned: "So since [Barrett is] directly involved here, it seems like his communications are going to be the ones that are most relevant, whereas Major General Christine here is in the role of kind of concurring with the findings and recommendations of the memorandum from the National—or that has the National Guard Bureau letterhead on top of it."  (*Id.* at 38.)  Consequently, Judge Chung ruled that Kennedy could search Barrett's e-mails but not Christine's.  (*Id.*)

## II. LEGAL STANDARD

"When reviewing a magistrate judge's order that is not dispositive of a party's claim or defense, the court must 'modify or set aside any part of the order that is clearly

6

erroneous or is contrary to law.'" *Perkins v. Suzuki Motor Corp.*, 2021 WL 5629067, at *2 (D. Colo. Feb. 19, 2021) (quoting Fed. R. Civ. P. 72(a)).  "The 'clearly erroneous' standard applies to the magistrate judge's factual findings, which may not be set aside unless 'on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "The 'contrary to law' standard applies to the magistrate judge's legal determinations and permits plenary review as to matters of law; the court may set aside a legal ruling if the magistrate judge applied the wrong legal standard or applied the appropriate legal standard incorrectly." *Id.* (citation omitted).

### III. ANALYSIS

Kennedy contends that Judge Chung erred by rejecting his request to search Christine's e-mails.  (ECF No. 130.)  But the Objection does not clearly explain *why* Kennedy believes this is so.  Indeed, a reader picking up only the Objection would have no idea what this discovery dispute is about because it does not devote any effort to laying out the pertinent background of this issue.  Instead, the Objection is comprised of only three short paragraphs of what appears to be argument and "analysis."  (*See generally id.*)  Given this poor state of the briefing, the Objection is subject to being summarily overruled.  *See Anderson v. Colvin*, 2013 WL 3216140, at *3 (D. Colo. June 25, 2013) ("Plaintiff articulates several additional alleged errors, sprinkling random thoughts and brief citations throughout her brief.  I do not consider such inadequately briefed, and therefore undeveloped, arguments.").

At any rate, putting aside the quality of the Objection, the Court perceives no error—let alone clear error, *Perkins*, 2021 WL 5629067, at *2—in Judge Chung's non-

7

dispositive discovery ruling.  Kennedy supplied little more than pure conjecture at the hearing that a search of Christine's e-mail would reveal evidence suggesting that Defendants—who serve in a different department of the military—intend to enforce the Instruction against Kennedy.  In reviewing the 39-page discovery hearing transcript,[4] the Court has identified no cogent argument by Kennedy's counsel that Christine has any connection to the investigation of his 2020 First Amendment activity other than the memorandum, which barely mentions that investigation.  (*See generally* ECF No. 94-5.)  To reiterate, the memorandum centers around Kennedy's alleged unauthorized civilian practice of law and misleading statements, not his First Amendment activity from 2020.  What's more, the memorandum made clear that the investigation "was largely unfounded with respect to CPT Kennedy's chain of command and supervisor." (*Id.* at 6.)  Hence, there is little reason to believe that a search of Christine's e-mails would unearth probative evidence supporting Kennedy's as-applied claim.

On the other side of the ledger is the burden to be imposed on Defendants by requiring them to search Christine's e-mails.  The Court discerns no clear error in Judge Chung's proportionality finding on this issue.  Requiring Defendants to conduct such a search would necessitate compelling the coordination of the U.S. Army Reserves with a totally distinct military branch: the National Guard Bureau.  Judge Chung reasonably concluded that Rule 26's proportionality principles do not warrant requiring Defendants to undertake such a burden.  *See Ennis v. Alder Prot. Holdings, LLC*, 2022 WL 4349247, at *1 (D. Utah Sept. 19, 2022) ("All discovery is also subject to the

---

[4] The Court appreciates and credits the time and effort defense counsel spent laying out the pertinent background of this issue in her Response to the Objection.

8

proportionality limitations imposed by Rule 26.").

Finally, the Court observes that the Objection appears to raise arguments that Kennedy's counsel did not articulate at the hearing for why he should be able to search Christine's e-mails.  Kennedy says that, "[i]f confirmed, [Christine] will be on top of Plaintiff's technical chain of command, with authority to punish Plaintiff for protest participation based on the DoDI."  (ECF No. 1309 at 2.)  Thus, he argues, "Christine is uniquely suited to have relevant information as to the likelihood of present and future enforcement of the DoDI."  (*Id.*)  Kennedy additionally argues that, contrary to Judge Chung's reasoning, Barrett's e-mails "are simply not a reliable substitute for BG Christine's e-mails" because Barrett "used a non-military account for military emails."  (*Id.*)  On this last point, it appears that Barrett used a "nasa.gov" e-mail address when corresponding with Kennedy, not a military e-mail address.  (*Id.*)

Kennedy's new rationales are meritless.  For one, the Court does not understand why Christine's promotion (in a separate department of the military) would make it any more likely that he has exchanged e-mails about Kennedy's 2020 protest activity.  That is, why would Christine's 2025 elevation to Major General have any bearing on whether he e-mailed about Kennedy's First Amendment activities back in 2020?  Kennedy does not bother to explain.

And two, Kennedy did not mention at the hearing that Barrett used a non-military e-mail account when corresponding with him.  "[A] district judge has discretion to consider new evidence when reviewing a magistrate judge's nondispositive order if there is good cause to do so in the interests of justice and efficiency."  *Perkins*, 2021 WL 5629067, at *8.  "Such discretion," however, "should rarely be exercised."  *Id.*

9

(citation omitted).  Simply put, Kennedy has failed to demonstrate that this is one of those rare occasions.

## IV. CONCLUSION

For the foregoing reasons, the Court OVERRULES the Objection.  (ECF No. 130.)

Dated this 29th day of July, 2025.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge

10