**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 21-cv-0772-WJM-CYC

ALAN KENNEDY,

Plaintiff,

v.

STEVEN S. NORDHAUS, Chief of the National Guard Bureau;
DANIEL DRISCOLL, Secretary of the Army; and
PETE HEGSETH, Secretary of Defense,

Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Alan Kennedy sues Steven Nordhaus, Daniel Driscoll, and Pete Hegseth (collectively, "Defendants") for alleged violations of his First Amendment rights and the Administrative Procedure Act ("APA"). (ECF No. 57).

Before the Court is Defendants' Motion for Summary Judgment ("Motion"). (ECF No. 150.) Plaintiff filed a response opposing the Motion (ECF No. 161), to which Defendants filed a reply (ECF No. 168).

For the following reasons, the Court grants in part and denies in part the Motion.

## I. BACKGROUND & PROCEDURAL HISTORY[1]

The parties are familiar with the background of this case from, among other

---

[1] All citations to docketed material are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination. Further, because "cross motions for summary judgment . . . authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties," this section primarily draws upon the parties' cross motions for summary judgment. *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529,

sources, the Court's Order granting Defendants' first Motion to Dismiss (ECF No. 78) ("First Dismissal Order"), its subsequent vacatur of that Order (ECF No. 86), and its Order granting in part and denying in part the second Motion to Dismiss (ECF No. 102) ("Second Dismissal Order"). The Court incorporates that background here and adds the following pertinent facts.

Plaintiff is a major in the United States Army Reserve, who previously served as a captain in the Colorado Army National Guard. (ECF No. 150 at 2; ECF No. 160 at 5; *see* ECF No. 160-1.) On May 30, 2020, in the aftermath of the tragic murder of George Floyd, Plaintiff, while serving in the National Guard, peacefully participated in a Black Lives Matters protest while off-duty. (ECF No. 150 at 2 & 4; ECF No. 160 at 5.)

He wrote an opinion piece in the *Denver Post* describing his participation in the protest. (ECF No. 150 at 2; ECF No. 160 at 5.) The National Guard then investigated Plaintiff's protest participation and his writing of the op-ed. (ECF No. 150 at 2; ECF No. 160 at 5; ECF No. 169 at 3–4.) He penned another piece, this time in the *Colorado Newsline*, questioning why he was being investigated for his peaceful protest activity. (ECF No. 150 at 2–3; ECF No. 160 at 5–6.)

As a result, Plaintiff experienced "a cascade of reprimands, negative evaluations, and other detrimental actions affecting [his] military career, including a withheld medal and delayed promotion" during his time with the National Guard. (ECF No. 78 at 3.) According to Plaintiff, these actions included "four investigations, two reprimands, and two negative evaluations." (ECF No. 160 at 6.) Defendants dispute the number of investigations and

1534 (10th Cir. 1991) (quoting *Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1981)).

the bases of some of these actions. (ECF No. 169 at 3–4.)

This cascade included a Letter of Reprimand during Plaintiff's time with the National Guard; in this letter, Plaintiff was alleged to have violated Department of Defense Instruction 1325.06, Enclosure 3, Paragraph 6(d) ("Instruction"), which prohibits officers from participating in protests where "violence is likely to result." (ECF No. 150 at 4; ECF No. 57-4 at 9 (copy of the Instruction).) While Defendants state the Letter of Reprimand was destroyed, (ECF No. 150 at 4), Plaintiff maintains "it was in fact produced by Defendants as part of discovery." (ECF No. 161 at 7.)

On September 13, 2020, Plaintiff received a General Officer Memorandum of Reprimand ("GOMOR"). (ECF No. 150 at 4; ECF No. 57-6 (copy of the GOMOR).) The parties dispute the basis for the GOMOR. The GOMOR references Plaintiff's *Colorado Newsline* op-ed about the National Guard's investigation into his protest participation and states that he "violated regulations and provisions of the Colorado Code of Military Justice, and [his] actions brought disrepute and dishonor upon the [National Guard]." (ECF No. 57-6 at 2.)

The National Guard issued two negative evaluations, one of which was based on the GOMOR. (ECF No. 150 at 5–6; *see* ECF No. 160 at 6.) Plaintiff "filed various intra-military appeals challenging the Personnel Actions, which he has prevailed on during the pendency of this action." (ECF No. 102 at 3; *see* ECF No. 160 at 11.)

In February 2022, Plaintiff transferred to the Army Reserve and was considered for promotion to major. (ECF No. 150 at 6.) In June 2022, Plaintiff was selected for promotion to "a major-level position as a Brigade Judge Advocate for the 1st Brigade, 94th Training Division (Force Sustainment)." (ECF No. 150 at 8.)

Majors must complete Intermediate Legal Education ("ILE") to qualify for promotion to lieutenant colonel. (ECF No. 150 at 8.) ILE prepares officers for "leadership, staff and technical roles at the battalion level and higher." (*Id.* at 8–9.) "Reserve Judge Advocates, like Plaintiff, are considered by an ILE Board for a residential ILE course when they are promoted." (*Id.* at 9.) While all Majors must complete ILE, those selected for resident programs receive a free master's degree. (ECF No. 160 at 6; ECF No. 169 at 5.) Plaintiff alleges those selected for resident ILE are more likely to receive choice assignments and be later promoted to lieutenant colonel, which Defendants dispute. (ECF No. 160 at 6; ECF No. 169 at 6.) Instead, Defendants contend that "[r]esident ILE is not needed for Reserve Judge Advocates to have successful careers." (ECF No. 150 at 10.)

"The ILE Board uses the same personnel file as the promotion board." (ECF No. 150 at 9.) So, while Plaintiff was being considered for resident ILE, the ILE Board's file contained the second negative evaluation ("Second Evaluation") as well as a letter explaining the Second Evaluation should be removed. (ECF No. 150 at 9; ECF No. 160 at 7.) Plaintiff was not selected for resident ILE. (ECF No. 150 at 9; ECF No. 160 at 7.)

Plaintiff appealed his non-selection for resident ILE to the Army Board for Correction of Military Records ("ABCMR"). (ECF No. 150 at 11; ECF No. 160 at 11–12.) The ABCMR granted him partial relief, determining "documents associated with the GOMOR and adverse [officer evaluation reports]" should be removed from his record. (ECF No. 150-8 at 46.) But the ABCMR denied his request to appeal the constitutionality of the Instruction, "as this matter is beyond the scope of the [ABCMR]'s authority." (*Id.*)

Plaintiff filed suit in this action on March 16, 2021. (ECF No. 1.) He then filed his Second Amended Complaint. (ECF No. 57.) The Court granted Defendants' Motion to

Dismiss in the First Dismissal Order (ECF No. 78), but then vacated the Order (ECF No. 86). Later, in the Second Dismissal Order, the Court dismissed the National Guard Defendants from the case. (ECF No. 102 at 13.) The parties filed cross motions for summary judgment. (ECF Nos. 150 & 160.) Defendants move for summary judgment on all of Plaintiff's claims. (ECF No. 150.)

## II. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends on whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). Stated differently, a genuine issue of material fact exists when the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 831 (10th Cir. 1997).

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. Where the non-movant bears the burden of proof at trial, the non-movant must then point to specific evidence establishing a genuine issue of material fact with regard to each challenged element. *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002); *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). In addition, the Court must resolve

factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## III. ANALYSIS

Defendants move for summary judgment as to all of Plaintiff's claims. The Court begins, as it must, with jurisdiction, by evaluating whether Plaintiff has standing. The Court then determines whether his claims are ripe for review, and if so, whether they are reviewable in light of the deference courts generally accord to the military. Because Plaintiff has standing and his claims are justiciable, the Court proceeds to consider whether summary judgment in Defendants' favor is appropriate as to Plaintiff's First Amendment claims. The Court then addresses his APA claim. Finally, the Court turns to his Declaratory Judgment Act claim.

### A. Jurisdiction & Justiciability

#### 1. Standing

As a threshold matter, the Court has an independent duty to ensure it has jurisdiction. *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1029 (10th Cir. 2014). And "[b]ecause standing is jurisdictional," the Court "must first determine whether [Plaintiff] has standing to bring [his] claims." *Dine Citizens Against Ruining Our Environment v. Bernhardt*, 923 F.3d 831, 840 (10th Cir. 2019).

A plaintiff who satisfies the following three requirements has standing to bring suit:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and internal

quotation marks omitted). But "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citation modified).

In First Amendment claims involving a chilling effect, plaintiffs fulfill the injury in fact requirement through: "(1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so *because* of a credible threat that the statute will be enforced." *Initiative & Referendum Institute v. Walker*, 450 F.3d 1092, 1089 (10th Cir. 2006) (emphasis in original).

Here, Plaintiff has met the requirements for standing. First, he has established that he suffered an injury in fact. Plaintiff's concrete injuries are based on the ILE Board not selecting him for the resident program, investigations undertaken when he transferred to the U.S. Army Reserves, flags in his "IPPS-A" file, a delayed promotion, and negative counseling. (*See* ECF No. 160 at 9; ECF No. 102 at 10 & n.3; *but see* ECF No. 169 at 8.) Those injuries satisfy this requirement for his non-First Amendment claims.

With that said, the Court must look to the *Walker* factors to determine whether Plaintiff has established injury in fact because he brings a First Amendment challenge. As to the first *Walker* factor, Plaintiff peacefully attended a Black Lives Matter protest in 2020, which launched the chain of events at issue in this lawsuit. Furthermore, because the Instruction regulates service member participation in "off-post demonstrations," (ECF No. 57-4 at 9), it necessarily covers Plaintiff's attendance at the Black Lives Matter protest.

The second *Walker* factor too shows Plaintiff's injury in fact. Plaintiff has declared

on multiple occasions his desire to attend demonstrations such as No Kings protests, anti-ICE protests, and the Women's March. (*See, e.g.*, ECF No. 160-1 at ¶¶ 8–9.) Likewise, in light of the third *Walker* factor, he attests that he has no intention of attending those demonstrations because of a credible threat the statute will be enforced. (*Id.*) But "standing on a chilled-speech claim requires both subjective and objective deterrence—*i.e.*, not just that the plaintiff claims to be deterred by the challenged law but that the challenged law would plausibly deter a reasonable person in the plaintiff's position." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1164 (10th Cir. 2023); *see D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004) ("The chilling effect, to amount to an injury, must arise from an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the statute's enforcement.")

Accordingly, Plaintiff has demonstrated subjective deterrence from engaging in this sort of speech. The Instruction remains in effect. (ECF No. 160-1 at ¶ 9.) A reasonable person in Plaintiff's position would likely be deterred from engaging in this sort of speech because the Instruction remains in effect and of the personnel actions he faced from the National Guard. Although those personnel actions were eventually remedied—resulting in the National Guard Defendants' dismissal from the case—Plaintiff was nevertheless reprimanded for his protest participation, as reflected, for example, in the Letter of Reprimand. As such, he has also demonstrated objective deterrence and thus meets the third *Walker* factor.

Second, Plaintiff has demonstrated traceability because there is a throughline connecting his non-selection for resident ILE and Defendants' issuance of the Instruction.

In the Second Dismissal Order, the Court concluded Plaintiff had established traceability at the motion to dismiss stage because "the decision [not to promote him] can be traced back to the inclusion of the Second Evaluation in the file in the ILE Board." (ECF No. 102 at 10.) When ruling on the motion to dismiss, the Court assumed the truth of Plaintiff's allegations, as the law requires. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). By contrast, at this juncture, both parties seek summary judgment. "In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation modified); *see* Fed. R. Civ. P. 56.

In that vein, neither party disputes that the Second Evaluation was in the file considered by the ILE Board. (ECF No. 150 at 6, 9; ECF No. 160 at 7; ECF No. 169 at 4–5.) Put differently, and as the Court explained in its vacatur order, the evidence demonstrates "that policies implemented by the Federal Defendants in part caused this unfortunate state of affairs." (ECF No. 86 at 5–6.) Thus, Plaintiff has established the traceability requirement of standing because the evidence shows that his file was used in his non-selection for resident ILE included the Second Evaluation.

Furthermore, the Court's analysis from its Second Dismissal Order applies to its disposition of the Motion too:

> As alleged, there is a throughline between the alleged Personnel Actions undertaken by the U.S. Army Reserve and the Federal Defendants: the issuance of the Instruction. In its [First Dismissal Order], the Court found that Plaintiff's claimed injury was not "fairly traceable" to the Federal Defendants because "this case is about the unfair punishment meted out by the National Guard Defendants because Plaintiff's commanding officers disagreed with the content of his constitutionally

> protected speech." (ECF No. 78 at 9–10.)
>
> But now, Plaintiff alleges he has been unfairly punished by the U.S. Army Reserve as a result of, among other things, the Instruction issued (and reaffirmed) by the Federal Defendants. (ECF No. 94 at 7.) Unlike before, where COARGN remedied its Personnel Actions by overturning them, the injury caused by the U.S. Army Reserve has not yet been remedied. And as the Court explained in its vacatur order, this injury and "unfortunate state of affairs" can reasonably be tied to "policies implemented by the Federal Defendants." (ECF No. 86 at 5–6.) Thus, the Court rejects Defendants' argument that the Court lacks subject matter jurisdiction with respect to its constitutional claims against the Federal Defendants.

(ECF No. 102 at 12.) Although the ABCMR has now partially granted Plaintiff relief, it denied him relief with respect to the constitutionality of the Instruction. Thus, the evidence presented to the Court, establishes traceability.

Third, redressability is simple here. The Court reaches the same conclusion it did in the Second Dismissal Order: "the Federal Defendants have the authority to withdraw or amend the Instruction, *i.e.*, redress Plaintiff's injuries." (ECF No. 102 at 11.)

Therefore, the Court concludes Plaintiff has standing, which empowers the Court to hear his claims in this suit.

2. Ripeness

Defendants argue that Plaintiff's First Amendment challenges are not ripe because Plaintiff "has not identified a single instance of the federal Defendants applying the Instruction to him—or anyone else." (ECF No. 150 at 26.) They point out that "any concerns about whether the U.S. Army Reserve might apply the Instruction are purely speculative" and that "[s]peculation does not render such concerns ripe for judicial review." (*Id.* at 23.) While such a point might ordinarily be fatal to a plaintiff's claim, ripeness in First Amendment facial challenges is subject to a relaxed standard. *Kan. Jud. Rev. v.*

*Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008).

The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). Ripeness is a question of timing because the focus is on "whether the harm asserted has matured sufficiently to warrant judicial intervention." *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975)). It exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

In general, courts determine whether a case is ripe for judicial review by evaluating (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Id.* at 149. But "First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995) ("*Richardson*") (quoting 13A Wright & Miller's Federal Practice & Procedure § 3532.3). But when evaluating whether a First Amendment facial challenge is ripe, the Court considers: "(1) hardship to the parties by withholding review; (2) the chilling effect the challenged law may have on First Amendment liberties; and (3) fitness of the controversy for judicial review." *Stout*, 519 F.3d at 1116 (quoting *Richardson*, 64 F.3d at 1499–1500).

To be clear, with respect to Plaintiff's First Amendment claims, the Court evaluates ripeness on his as-applied challenge and retaliation claim under the regular ripeness

standard whereas it evaluates ripeness on the facial challenge under the relaxed standard. The Court concludes that Plaintiff's claims are ripe, even under both standards. The Court addresses the ripeness factors in the sequence laid out in *Stout*.

Considering the first ripeness factor, hardship to the parties, courts "focus on whether the challenged action creates a direct and immediate dilemma for the parties." *Peck v. McCann*, 43 F.5th 1116, 1134 (10th Cir. 2022) (quoting *Richardson*, 64 F.3d at 1499). The "ripeness inquir[y] in First Amendment cases often focus on the credibility of the threat of prosecution as an indicator of hardship, as the specter of prosecution can be a hardship in itself because it can chill future speech." *Id.* Defendants argue Plaintiff "cannot establish the credible threat of future enforcement necessary to obtain such relief." (ECF No. 150 at 21.) In *Richardson*, "[i]n response to the state's argument that there was no immediate threat of prosecution, [the Tenth Circuit] held that such a threat was not necessary to ripen the claim." *Stout*, 519 F.3d at 1116; *see Richardson*, 64 F.3d at 1502. So too here. While Defendants insist Plaintiff must point to an imminent threat for his claim to survive, First Amendment caselaw is clear that he need not do so in a claim such as this one. Moreover, as explained in the standing analysis above, Plaintiff has already had the Instruction enforced against him. And so, while his claims allege a chilling effect on future speech, this case is not purely a pre-enforcement challenge.

Concerning the second ripeness factor, the chilling effect, Plaintiff has argued that the Instruction is both overbroad and vague, lending itself to chill him from speaking his beliefs. "It is generally accepted that the arguable vagueness of a statute greatly militates in favor of finding an otherwise premature controversy to be ripe." *Richardson*, 64 F.3d at 1503. Plaintiff's argument that the Instruction is vague, then, leads the Court to conclude

that his facial challenge is ripe for review. Courts apply a relaxed ripeness standard when a chilling effect on speech is involved because a plaintiff "should not have to risk prosecution, under a [regulation] whose scope is unclear, before his challenge to the constitutionality of that [regulation] is ripe." *Id.*; *cf. Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (Plaintiff "does not have to await the consummation of threatened injury to obtain preventive relief."). Plaintiff has already been punished for his participation in the Black Lives Matter protest—by the National Guard Defendants, who were dismissed from this case. And whether the federal Defendants had punished him too is one of the key factual questions in this case. The Court notes that the alleged chilling effect runs through Plaintiff's as-applied challenge and his retaliation claim. Even so, the Court considers this second ripeness factor only as to Plaintiff's facial challenge and not as to his remaining claims.

Turning to the third ripeness factor, which applies to all his claims, the Court focuses on "whether [the] challenged government action is final and whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed." *Stout*, 519 F.3d at 1118. A First Amendment challenge to a regulation's constitutionality on its face is purely a legal question, so Plaintiff's facial challenge is ripe for judicial review. *See ACORN v. City of Tulsa, Okla.*, 835 F.2d 735, 740 (10th Cir. 1987). His remaining claims present more of a challenging ripeness inquiry. "Where disputed facts exist and the issue is not purely legal, greater caution is required prior to concluding that an issue is ripe for review." *Sierra Club v. Yeutter*, 911 F.2d 1405, 1417 (10th Cir. 1990).

The Court questions, as it will explain in discussing Plaintiff's APA claim, whether

Plaintiff's non-selection for resident ILE is truly final. Exhaustion of administrative remedies, however, ripens a claim for judicial review. *Golisch v. Colvin*, 205 F. Supp. 3d 1276, 1280 (D. Kan. 2016). Exhaustion, then, lends itself to finality for the purposes of determining ripeness. Indeed, Plaintiff has pursued various intra-military avenues for relief in this action. He appealed the GOMOR to the Department of Army Suitability Evaluation Board. (ECF No. 150-8 at 6–17.) It rendered a decision. (*Id.*) He appealed the Officer Evaluation Reports from to the Army Review Board Agency. (*Id.* at 19–38.) It rendered a decision. (*Id.*) He appealed the Second Evaluation to the Army Special Review Board. (ECF No. 150 at 6; *Id.* at 21.) It rendered a decision. He appealed his non-selection for resident ILE to the ABCMR. (ECF No. 150-8 at 40–52.) It rendered a decision.[2] (*Id.*) The Court thus concludes that Plaintiff has exhausted his intra-military remedies.

Defendants even acknowledge that Plaintiff "has exhausted intra-military remedies for only one of the federal actions: his non-selection for resident ILE" but they argue that he must also exhaust intra-military remedies for the "alleged 'new investigation' or delayed promotion." (ECF No. 150 at 16.) Besides that statement, Defendants do not explain how the investigation or delayed promotion are separate from his non-selection. Moreover, Defendants admit that "Plaintiff's claims all involve an alleged violation of" his First Amendment rights, (ECF No. 150 at 16), so it confounds the Court as to how to square Defendants' argument. Defendants also fail to explain what other avenues of intra-military review Plaintiff could seek as to the constitutionality of the Instruction.

In the Court's view, Defendants' argument seeking to detach Plaintiff's claims from

[2] Indeed, in its Second Dismissal Order, the Court explicitly noted the ABCMR remained an avenue for intra-military relief. (ECF No. 102 at 12.) Plaintiff pursued that course of action, which granted him partial relief.

each other is unconvincing. Defendants cannot, on the one hand, insist Plaintiff should have detached his grievances from each other and sought separate tracks of intra-military review on them while, on the other hand, concede that his First Amendment challenges form the locus of those very same grievances. Although the Court questions whether there is a final agency action at play in this case, it concludes Plaintiff has exhausted intra-military remedies. As such, Plaintiff's remaining claims are ripe for review.

Concluding this case is ripe for review, the Court pivots to determine whether it may review the constitutionality of the Instruction, given its status as a military regulation.

3. Reviewability of Military Decisions

In its Second Dismissal Order, the Court noted that "Defendants may reraise [their] argument [regarding justiciability] in a summary judgment motion." (ECF No. 102 at 12–13 n.6.) Defendants have done so, contending that Plaintiff's claims are not justiciable because military decisions are not subject to judicial review. The Court now considers that argument, but in doing so, disagrees with Defendants.

Courts generally accord deference to the military and "must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). And in First Amendment cases, courts reviewing military regulations employ "far more deferential [review] than constitutional review of similar laws or regulations designed for civilian society." *Id.* Even so, courts "of course do not abdicate [their] ultimate responsibility to decide the constitutional question . . . ." *Rostker v. Goldberg*, 453 U.S. 57, 67 (1981). Indeed, "civilian courts may review military matters when substantial constitutional rights are in jeopardy or when the military has acted in violation of applicable statutes or its own regulations." *Saum v. Widnall*, 912 F. Supp. 1384 (D. Colo. 1996).

In *Lindenau v. Alexander*, the Tenth Circuit recognized that "actions against military officials for violating their own regulations are reviewable or justiciable, as are cases questioning the constitutionality of statutes relating to the military, executive orders, and regulations." 663 F.2d 68, 71 (10th Cir. 1981). There, the Tenth Circuit adopted a test to determine whether a military action is reviewable, under which courts evaluate: (1) "whether the case involves an alleged violation of a constitutional right, applicable statute, or regulation," and (2) "whether intra-service remedies have been exhausted." *Id.* (citation omitted). If both those conditions are met, courts then weigh "the nature and strength of the challenge to the military determination, the potential injury to the plaintiff if review is refused, the type and degree of anticipated interference with the military function, and the extent to which military discretion or expertise is involved in the challenged decision." *Id.* (citation omitted).

Is the Instruction reviewable? The United States Supreme Court has answered that question in the affirmative. Indeed, the Supreme Court has twice before considered different parts of the Instruction in *Brown v. Glines*, 444 U.S. 348 (1980), and *Secretary of the Navy v. Huff*, 444 U.S. 453 (1980). In *Brown*, the Supreme Court considered "challenges to United States Air Force regulations that require members of the service to obtain approval from their commanders before circulating petitions on Air Force bases." 444 U.S. at 349. In *Huff*, the Supreme Court similarly considered a challenge to Navy and Marine Corps regulations that "requir[ed] military personnel on an overseas base to obtain command approval before circulating petitions addressed to Members of Congress." 444 U.S. at 453. In both cases, the Supreme Court upheld the challenged regulations as permissible statutorily and under the First Amendment. *Brown*, 444 U.S. at 361; *Huff*,

444 U.S. at 458.

The Supreme Court came to its conclusion in *Brown* by applying intermediate scrutiny review. 444 U.S. at 355. The Supreme Court reiterated that "the special character of the military requires civilian authorities to accord military commanders some flexibility in dealing with matters that affect internal discipline and morale." *Id.* at 360. Although the Supreme Court "recognized that the military must possess substantial discretion over its internal discipline," *id.* at 357, it has never held that such deference bars judicial review of military decisions. It did caution, however, that "[i]n construing a statute that touches on [military] matters, . . . courts must be careful not to 'circumscribe the authority of military commanders to an extent never intended by Congress.' " *Id.* at 360 (citation omitted).

With these principles in mind, it is worth noting that the Supreme Court's decisions in *Brown* and *Huff* predated the Tenth Circuit's decision in *Lindenau*. Treating deference to the military as a justiciability question appears to be a creature of the courts of appeals. *See, e.g.*, *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) (establishing test for reviewability of military decisions by courts); *Lindenau*, 663 F.2d at 70–72 (adopting *Mindes* test "to determine the reviewability of military matters"); *Schlanger v. United States*, 586 F.2d 667, 671–72 (9th Cir. 1978) (same). *But see Hanson v. Wyatt*, 552 F.3d 1148, 1158–59 (10th Cir. 2008) (questioning whether arguments regarding reviewability of military decisions are properly considered as "addressing justiciability in the sense that the term is used in the context of the political-question doctrine"). In any event, general judicial deference to the military does not preclude the Court from reviewing the Instruction.

The first *Lindenau* condition is not up for debate. This case involves an alleged

violation of Plaintiff's First Amendment rights. (ECF No. 150 at 16; ECF No. 161 at 24.) The parties disagree, however, as to whether Plaintiff has exhausted his administrative remedies as the second *Lindenau* condition requires. As the Court explained above, Plaintiff has exhausted his administrative remedies. Thus, Plaintiff has fulfilled *Lindenau*'s two prerequisites: this challenge involves his First Amendment rights and he has exhausted intra-military remedies.

The reviewability inquiry does not end there. Resolving the justiciability question requires the Court to weigh the four *Lindenau* factors to determine whether it may review the Instruction. Weighing the nature and strength of the challenge to the military determination, this factor favors neither party because there are genuine issues of material fact best left to a jury to resolve, as the Court will explain more completely below in evaluating whether summary judgment is appropriate. The Court recognizes that the summary judgment standard is not the same as one of the four factors contemplated by *Lindenau*. Nonetheless, whether there is a genuine issue of material fact is helpful to understand the nature and strength of a challenge to a military decision. *Cf. Jones v. Crow*, 2021 WL 5277462, at *6 (10th Cir. Nov. 12, 2021) ("[E]ven if the district court had considered the summary-judgment evidence or its prior ruling, that would not necessarily equate to a showing of likelihood of success on the merits."). In other words, whether a genuine issue of material fact exists such that a reasonable jury would find against one party or the other informs how strong a challenge against a military decision would be.

The potential injury to the plaintiff if review is refused counsels the Court to proceed with considering Plaintiff's challenge. "There is little need to reiterate that the freedoms of speech and of the press rank among our most cherished liberties." *Pittsburgh Press Co. v.*

*Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 381 (1973). Indeed, "if there is any fixed star in our constitutional constellation, it is the principle that the government may not interfere with an uninhibited marketplace of ideas." *303 Creative LLC v. Elenis*, 600 U.S. 570, 585 (2023) (citation modified). So, the potential injury posed to Plaintiff, if review is refused, is grave because it implicates one of the most fundamental rights under the Constitution. After all, Plaintiff already exhausted his intra-military remedies. Where else but the courts can he go to seek recourse?

The Court concludes that the *Lindenau* factors involving the type and degree of anticipated interference with the military function and the extent to which military discretion or expertise is involved in the challenged decision both weigh heavily against Defendants and thus strongly favor judicial review. Defendants argue these factors bar review, contending that "[r]eview of such matters would be unprecedented and would interfere with discretionary military decision-making, which is crucial to the military's ability to perform its mission effectively." (ECF No. 150 at 19.) "But the Supreme Court has never suggested that all matters military—*or even military personnel matters, the subject of this case*—are committed to the political branches of government to the exclusion of the judicial branch." *Hanson*, 552 F.3d at 1160 (emphasis added). Furthermore, "judicial resolution of a single personnel decision by interpreting a promulgated regulation is a far cry from a court's 'establish[ing] standards for the training, kind of weapons and scope and kind of orders to control the actions of the National Guard.' " *Id.* (alteration in original) (quoting *Gilligan v. Morgan*, 413 U.S. 1, 6 (1973)). Following the Tenth Circuit's lead, the Court concludes that the law allows for judicial review of these decisions.

The *Lindenau* test aside, Defendants' own internal agency decision implies the

Court is best positioned to consider Plaintiff's First Amendment challenge. Recall that the ABCMR punted on the question of the Instruction's constitutionality as beyond the scope of its authority. Determining the constitutionality of a challenged government action is squarely within the Court's authority. *Lindenau*, 663 F.2d at 71; *Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is. . . . The judicial power of the United States is extended to all cases arising under the constitution."). Indeed, deference to the military "does not mean . . . that when an Article III court is tasked with determining the constitutionality of a military policy, [the court's] role is transformed into that of a judicial rubber stamp." *Talbott v. United States*, 176 F.4th 720, 737 (D.C. Cir. 2026).

Accordingly, the Court will proceed to consider whether summary judgment is warranted on Plaintiff's claims.

**B. First Amendment Claims**

Plaintiff raises several First Amendment challenges against Defendants, including an as-applied challenge (First Claim); another challenge arguing the instruction is facially unconstitutional as non-neutral, overbroad, and vague (Second Claim); and a retaliation challenge (Fifth Claim). As the Court explains below, it will grant summary judgment to Defendants as to Plaintiff's Second Claim. But genuine issues of material fact preclude the Court from granting summary judgment on the First and Fifth Claims.

The First Amendment of the United States Constitution protects the right to freedom of speech and of assembly. U.S. Const. amend. I. "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." *Turner Broadcasting System, Inc. v. Fed. Comms. Comm'n*, 512 U.S. 622, 641 (1994).

"[H]ow the First Amendment applies to [the government's] power to regulate speech depends upon the context in which the regulation of speech occurs." *Chiles v. Salazar*, 607 U.S. 627, 665 (2026) (Jackson, J., dissenting). Military service members are entitled to the First Amendment's protections but "the different character of the military community and of the military mission requires a different application of those protections." *Parker v. Levy*, 417 U.S. 733, 758 (1974). Thus, "[s]peech likely to interfere with these vital prerequisites for military effectiveness therefore can be excluded from a military base." *Brown*, 444 U.S. at 354.

For this reason, courts assessing the constitutionality of a speech restriction upon military service members apply intermediate scrutiny review, meaning they evaluate whether the restriction "restrict[s] speech no more than is reasonably necessary to protect the substantial government interest." *Brown*, 444 U.S. at 355. Courts typically characterize intermediate scrutiny as being a standard under which a challenged law survives review if it "promotes a substantial government interest that would be achieved less effectively absent the regulation and does not substantially burden more speech than is necessary to further that interest." *TikTok Inc. v. Garland*, 604 U.S. 56, 76 (2025) (internal quotation marks omitted).

The Instruction states as follows:

> 6. <u>OFF-POST DEMONSTRATIONS BY SERVICE MEMBERS</u>. Members of the Armed Forces are prohibited from participating in off-post demonstrations under any of these circumstances:
> a. They are on-duty.
> b. They are in a foreign country.
> c. The activities constitute a breach of law and order.
> d. Violence is likely to result.
> e. They are in uniform in violation of DoD Instruction 1334.1 (Reference (h)).

(ECF No. 57-4 at 9.) Plaintiff specifically takes issue with the phrase "[v]iolence is likely to

result." (ECF No. 161 at 19–20.) The Court analyzes Plaintiff's facial challenge to the Instruction before considering his as-applied challenge and retaliation claim.

1. Facial Challenge

In a First Amendment facial challenge, "[t]he question is whether 'a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.' " *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)) (alteration in original). "[A] first amendment challenge to the facial validity of a statute is a strictly legal question; it does not involve the application of the statute in a specific factual setting." *ACORN*, 835 F.2d at 740. "Where the only issue before the Court is a pure question of law, summary judgment is proper." *Bellock v. United States*, 574 F. Supp 3d 932, 935 (D. Colo. 2021). "Claims of facial invalidity often rest on speculation about the law's coverage and its future enforcement." *Moody*, 603 U.S. at 723 (internal quotation marks omitted).

As the Court explained above, when evaluating a First Amendment challenge to a military regulation, the Court exercises intermediate scrutiny review, analyzing whether the "regulations restrict speech no more than is reasonably necessary to protect the substantial government interest." *Brown*, 444 U.S. at 355.

Plaintiff argues the Instruction is unconstitutional on its face. The Court disagrees and will thus grant summary judgment to Defendants on the facial challenge for the following reasons. First, the Court holds that the Instruction is facially neutral. Second, the Court determines that the Instruction is neither overbroad nor vague. Third, the Court subjects the Instruction to intermediate scrutiny and holds that it does not, on its face, run afoul of the First Amendment.

a. *Neutrality*

Content-based restrictions on speech, which are based on the speech's subject matter or communicative content, are "presumptively unconstitutional" and thus trigger strict scrutiny review, under which the government's burden is to prove the restriction is "narrowly tailored to serve compelling state interests." *Chiles*, 607 U.S. at 640 (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). By contrast, content-neutral restrictions "are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excusing certain ideas or viewpoints from the public dialogue." *Turner*, 512 U.S. at 642 (citation omitted). "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Likewise, under the immediate scrutiny standard, courts "sustain a content-neutral [regulation] if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *TikTok Inc.*, 604 U.S. at 70–71 (internal quotation omitted).

Nothing in the record indicates the military adopted the Instruction because of disagreement with the message it conveys, which favors the conclusion that the Instruction is content neutral. Plaintiff argues that the Instruction "prohibiting speech if someone believes 'violence is likely to result,' in the absence of any narrowing construction, let Defendants label Black Lives Matter protests as 'inherently violent.' " (ECF No. 161 at 21 (citations omitted).) But the Instruction "ha[s] nothing to do with content," *Boos v. Barry*, 485 U.S. 312, 320 (1988), so "it satisfies the requirement that time, place, or manner

regulations be content neutral." *Ward*, 491 U.S. at 791. Nothing in the Instruction mentions Black Lives Matter. And nothing in the Instruction delineates the types of protests service members are forbidden from attending. Instead, the Instruction simply outlines the circumstances under which service members may not participate in off-post demonstrations. (ECF No. 57-4 at 9.) Contrary to Plaintiff's position, then, the Instruction does not restrict the *content* of service members' speech.

As the Court will explain below, the Instruction satisfies intermediate scrutiny review as content-neutral speech restrictions must.

b. *Overbreadth*

When a party succeeds on an overbreadth challenge, "the overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied." *United States v. Hansen*, 599 U.S. 762, 769 (2023). To conduct an overbreadth analysis, the Court (1) "construes the challenged statute to determine whether it covers protected speech" and then (2) "determines whether the unconstitutional applications of the statute are substantially disproportionate to the statute's lawful sweep." *Terry v. Drummond*, 183 F.4th 1281, 1293 (10th Cir. 2026) (citation modified).

"The overbreadth claimant bears the burden of demonstrating, from the text of the law and from actual fact, that substantial overbreadth exists." *Id.* (citation modified). Meeting both overbreadth factors "suffices to invalidate *all* enforcement of that law, 'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.' " *Virginia v. Hicks*, 539 U.S. 113, 119 (emphasis in original) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). Indeed, "[r]arely, if ever, will an overbreadth challenge succeed against a law

or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech." *Id.* at 124.

Here, Plaintiff has failed to meet his burden for his overbreadth claim. Nevertheless, he has demonstrated the first overbreadth factor. No one disputes that Plaintiff's participation in the Black Lives Matter protest constitutes an "off-post demonstration" under the Instruction. As such, the Instruction covers protected speech. But Plaintiff cannot show the Instruction falls within the second factor.

Plaintiff argues "[o]n its face the [Instruction] sweeps in peaceful, lawful protest by off-duty, out-of-uniform service members whenever a third party's violence becomes 'likely,' chilling participation in the precise kind of public debate the First Amendment exists to protect." (ECF No. 160 at 26.) But that argument undercuts Plaintiff's position. His argument shows that the Instruction is so specific that it covers only its lawful sweep—the circumstances it lists. Aside from that generalization, Plaintiff does not offer "which of the [Instruction's] applications violate the First Amendment," nor does he "measure them against the rest." *Moody*, 603 U.S. at 725. Courts "must explore the [Instruction's] full range of applications—the constitutionally impermissible and permissible both—and compare the two sets." *Id.* But as Plaintiff's argument shows, the Instruction's full range of applications are limited and specific. Defendants refute Plaintiff's argument by arguing "there are a substantial number of situations to which the Instruction may be validly applied. . . . For example, there is no valid reason why the military could not reprimand a soldier for cheering on others to attack police at the Capitol Building on January 6, 2021." (ECF No. 150 at 25.)

For these reasons, the Court holds the Instruction is not unconstitutionally

overbroad.

c. *Vagueness*

Under the vagueness doctrine, a court may invalidate a given law or regulation as unconstitutional if it is impermissibly vague. A statute or regulation is "impermissibly vague" if it (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

Here, the Instruction is not impermissibly vague because "it is clear what the ordinance as a whole prohibits." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (2000). The Instruction forbids participation in off-post demonstrations "at fixed times . . . and at a sufficiently fixed place . . . ." *Id.* at 111. Furthermore, the Instruction delineates a panoply of circumstances under which a service member may not engage in an off-post demonstration: a service member may not do so if "[t]hey are on-duty," "[t]hey are in a foreign country," "[t]he activities constitute a breach of law and order," "[v]iolence is likely to result," or "[t]hey are in uniform." (ECF No. 57-4 at 9.) People of ordinary intelligence, then, would reasonably understand the conduct the Instruction prohibits because of the specificity of its guidelines. Service members of ordinary intelligence could ask themselves several simple questions and decide whether the Instruction allows them to attend a protest. For instance, are they on duty? If so, they should not attend a protest. And so on. Likewise, the Instruction neither authorizes nor encourages arbitrary and discriminatory enforcement. As Defendants put it, "the Instruction does not, on its face, discriminate based on the content or subject matter of protests." (ECF No. 169 at 27.)

The Court thus holds that the Instruction is not impermissibly vague.

d. *Intermediate Scrutiny*

The Instruction triggers intermediate scrutiny despite Plaintiff's insistence that it triggers strict scrutiny instead.

Defendants posit that the government interest at stake here is the military's ability to perform its mission. The Supreme Court has long recognized the importance of this mission:

> One of the very purposes for which the Constitution was ordained and established was to "provide for the common defence," and this Court over the years has on countless occasions recognized the special constitutional function of the military in our national life, a function both explicit and indispensable. In short, it is "the prima business of armies and navies to fight or be ready to fight wars should the occasion arise." *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8, 14. And it is consequently the business of a military installation . . . to train soldiers, not to provide a public forum.

*Greer v. Spock*, 424 U.S. 828, 837–38 (1976). Moreover, in the military, "the right to command and the duty to obey ordinarily must go unquestioned." *Brown*, 444 U.S. at 357. As such, Defendants have articulated a substantial government interest.

The question that remains under intermediate scrutiny review is whether the Instruction restricts speech no more than is reasonably necessary to protect this substantial government interest. It does. Prohibiting service members for participating in protests where "violence is likely to result" is a measure that is reasonably necessary to protect the military's mission. Such a restriction on speech protects the safety of both service members and the civilian public. Think of the chain of command as a component of national defense. "[T]he accuracy and effect of a superior's command depends critically upon the specific and customary reliability of subordinates, just as the instinctive obedience of subordinates depends upon the unquestioned specific and customary

reliability of the superior." *Dep't of Air Force v. Rose*, 425 U.S. 352, 368 (1976). The Instruction protects service members by keeping them out of violence's way. Moreover, the Court agrees with Defendants that "the military has strong reasons to prohibit soldiers from becoming involved in violent disturbances" because "[s]oldiers are trained combatants." (ECF No. 150 at 25.) Furthermore, the Instruction protects the public, and thereby national defense, by ensuring service members are ready to serve. Indeed, "[t]he importance of these considerations to the maintenance of a force able and ready to fight effectively renders them undeniably significant to the public role of the military." *Rose*, 425 U.S. at 368.

Thus, the Instruction survives intermediate scrutiny.

* * *

Therefore, with respect to Plaintiff's First Amendment facial challenge to the Instruction, the Court will grant summary judgment to Defendants.

2. <u>As-Applied Challenge and Retaliation Claim</u>

While the Instruction, on its face, survives intermediate scrutiny, genuine issues of material fact preclude the Court from granting summary judgment to either party on Plaintiff's First Amendment as-applied challenge.

"A facial challenge considers the restriction's application to all conceivable parties, while an as-applied challenge tests the application of that restriction to the facts of a plaintiff's concrete case." *iMatter Utah v. Njord*, 774 F.3d 1258, 1264 (10th Cir. 2014) (citation omitted). An as-applied challenge requires "a developed factual record and the application of a [regulation] to a specific person." *Harmon v. City of Norman, Okla.*, 61 F.4th 779, 789 (10th Cir. 2023) (quoting *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (en banc)).

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). If an official takes adverse action against someone based on that forbidden motive, and "nonretaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment retaliation claim. *Id.* (citing *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998)); *see also Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) ("[A]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment constitutes an infringement of that freedom." (citation and internal quotation marks omitted)).

Here, the Court cannot assess whether the Instruction survives intermediate scrutiny review as applied to Plaintiff because there remain several genuine issues of material fact as to that issue. Central to this case is Plaintiff's protest participation and its interplay with the Instruction. As Plaintiff notes in his brief in opposition, "it was undisputed that Plaintiff was *off*-post, *off*-duty, *not* in a foreign country, *not* breaking the law, and *not* in uniform on May 30, 2020, when he *peacefully* joined a Black Lives matter protest in downtown Denver." (ECF No. 161 at 1 (emphasis in original); *see* ECF No. 161 at 2 & 4.) Given that understanding of the facts, a reasonable jury could find that the Instruction violated the First Amendment as applied to Plaintiff. In other words, a reasonable jury could find that Plaintiff complied with the Instruction but suffered retaliation nonetheless. Given this, the Court concludes that genuine issues of material fact preclude it from resolving this question as a matter of law.

Moreover, the Court notes that personnel actions also present genuine issues of material fact because the parties disagree as to various key aspects of the dispute. For example, the parties disagree as to the amount of personnel actions Plaintiff challenges. (*Compare* ECF No. 160 at 6 *with* ECF No. 169 at 3.) In addition, the parties dispute what formed the basis for the Second Evaluation. Plaintiff characterizes the Second Evaluation as being based on his protest attendance and the Instruction. (*See* ECF No. 160 at 7.) By contrast, Defendants characterize it as being based on the GOMOR and the *Colorado Newsline* opinion piece, not his protest attendance or the Instruction. (ECF No. 150 at 6, 11; ECF No. 169 at 3–4.)

Perhaps most critically, the parties disagree as to why Plaintiff was not selected for resident ILE. Defendants posit no evidence indicates that he was not selected because of the Second Evaluation, his protest attendance, or the Instruction. (ECF No. 150 at 11.) In support of the Motion, Defendants argue that "given the competitive nature of the selection process, Plaintiff cannot show that he would have been selected for resident training absent the Second Evaluation." (ECF No. 150 at 17.) But that argument belies Defendants' position. Whether Plaintiff would have been selected for the ILE resident training program absent the Second Evaluation presents a clear genuine issue of material fact best left for the jury.

In response, Plaintiff states that outside of the Second Evaluation, which was based on the Instruction, "nothing else in Plaintiff's Army file made him less than fully qualified and competitive for selection for resident ILE." (ECF No. 161 at 15.) "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way." *Coomer v. Make Your Life Epic LLC*, 780 F. Supp. 3d 1129, 1139 (D. Colo. 2025)

(citation omitted). And given this evidence, a reasonable jury could find in favor of either party.

The perceived value of resident ILE selection presents another genuine factual issue best left for the jury. While Defendants argue it is not necessary for a major to have a successful career, a reasonable jury could find that withholding the benefits of this designation, such as the free master's degree, from Plaintiff for his protest attendance constituted retaliation.

This case thus remains rife with genuine disputes of material fact, precluding the Court from granting summary judgment on both the as-applied claim and the retaliation claim. Therefore, the Court reserves these questions for resolution by the jury.

### C. Administrative Procedure Act Claim

The APA provides a limited waiver of sovereign immunity, under which "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Courts may only review a "final agency action." 5 U.S.C. § 704.[3] "Whether federal conduct constitutes final agency action within the meaning of the APA is a legal question." *Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000).

Here, it is unclear to the Court whether Plaintiff's non-selection for resident ILE

---

[3] In *Loper Bright Enterprises v. Raimondo*, the Supreme Court held that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires" and that "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." 603 U.S. 369, 412–13 (2024). It is unclear to the Court as to whether *Loper Bright* abrogates caselaw directing courts to accord deference to military. In any case, *Loper Bright* does not control the outcome of this case because the Instruction is reviewable, as the Court determines above.

constitutes a final agency action. It does not appear that non-selection for resident ILE precludes future selection for it, so this dynamic strikes against seeing such action as final. In any event, due to Plaintiff's failure to respond to Defendants' arguments on this claim, the Court deems Plaintiff to have confessed Defendants' argument on the APA claim. *Cf. Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) ("The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."); Fed. R. Civ. P. 56(e)(3) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered and undisputed—show that the movant is entitled to it."). Thus, the Court will grant summary judgment to Defendants on Plaintiff's APA claim.

**D. Declaratory Judgment Act Claim**

Plaintiff brings a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act "does not confer jurisdiction upon federal courts, so the power to issue declaratory judgments must lie in some independent basis of jurisdiction." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (quoting *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996)). Plaintiff does not address Defendants' argument on this point and is deemed to confess it. Nonetheless, given the wholly derivative nature of Plaintiff's declaratory judgment claim, due to the fact there are genuine issues of material fact on his predicate First Amendment as-applied and retaliation claims, summary judgment on this claim will also be denied.

## IV. CONCLUSION

For all these reasons, the Court orders as follows:

1. Defendants' Motion for Summary Judgment (ECF No. 150) is GRANTED IN PART and DENIED IN PART;
2. Plaintiff's Second Claim for Relief, brought as a First Amendment facial challenge, is DISMISSED WITH PREJUDICE;
3. Plaintiff's Third Claim for Relief, brought under the APA, is DISMISSED WITH PREJUDICE; and
4. The Motion is DENIED in all other respects.

Dated this 4th day of November, 2026.

BY THE COURT:

William J. Martínez
Senior United States District Judge